Fort Sanders Presbyterian Hospital et al., Appellees,

*v.*

The Health and Educational Facilities Board of the County of Knox et al., Appellants.

453 S.W.2d 771.

(*Nashville,* December Term, 1969.)

Opinion filed April 20, 1970.

241

BAKER, WORTHINGTON, BARNETT & CROSSLEY, FOWLER, ROWNTREE, FOWLER & ROBERTSON, Knoxville, and TAYLOR & SCHLATER, Nashville, for appellees.

JOHN A. WALKER, JR., EGERTON, McAFEE, ARMISTEAD & DAVIS, Knoxville, of counsel, for appellants.

Mr. Justice Creson delivered the opinion of the Court.

This appeal comes from the Chancery Court of Davidson County, Tennessee. The parties will be referred to herein as they appeared in the trial court; that is, appellees, Fort Sanders Presbyterian Hospital, et al. as complainants, and appellants, The Health and Educational Facilities Board of the County of Knox, et al., as defendants.

Complainant Fort Sanders Presbyterian Hospital is a nonprofit corporation incorporated under the laws of the State of Tennessee, and is engaged in the business of owning and operating a hospital and other related health care facilities in the City of Knoxville, Knox County, Tennessee.

Complainant Sisters of Mercy of Nashville, Tennessee, Inc. is a nonprofit corporation incorporated under the laws of the State of Tennessee, and owns and operates a hospital and related health care facilities under the name of St. Mary's Memorial Hospital in the City of Knoxville, Knox County, Tennessee.

Defendant is a public nonprofit corporation incorporated under Chapter 333 of the Public Acts of 1969, codified as T.C.A. secs. 48-1901 et seq.

Defendant David M. Pack is Attorney General of the State of Tennessee.

On November 17, 1969, complainants filed their original bill for declaratory judgment. Basically, this bill sought to have determined the right of complainants to specific performance of certain contracts executed between them and defendant pursuant to Chapter 333 of the Public Acts of 1969, and to have Chapter 333 declared valid and constitutional.

On November 25, 1969, defendant, The Health and Educational Facilities Board of the County of Knox, filed a demurrer contending, in essence, that the agreements entered into with petitioners were invalid, because Chapter 333 of the Public Acts of 1969 is an unconstitutional enactment.

David M. Pack, Attorney General of the State of Tennessee, filed a demurrer, considered as an answer by the Chancellor, which asserts that Chapter 333 of the Public Acts of 1969 is a constitutional enactment.

On December 31, 1969, the Chancellor entered his decree, finding Chapter 333 to be constitutional, not infringing any provision of the Constitution of the State of Tennessee or the Federal Constitution. He concluded that complainants were entitled to the relief prayed for.

Before proceeding to the various legal arguments made, some further statement of the facts is necessary.

On May 21, 1969, the General Assembly of Tennessee enacted Chapter 333 of the Public Acts of 1969. The purpose of the Act, as declared by the Legislature, was to provide a method to assist hospital institutions and

those of higher education in this State by providing facilities to further their purposes.

On June 30, 1969, the Quarterly Court of Knox County adopted a resolution authorizing the incorporation of the defendant Board. This same resolution was adopted by the Board of Commissioners of Knox County on July 15, 1969. Subsequent to these actions, the defendant Board was duly incorporated as a public, nonprofit corporation on July 24, 1969.

Complainants, separately and on different occasions, made application to defendant Board for assistance in financing building projects. Similar agreements were entered into with defendant which basically provided for defendant (1) to issue tax-exempt revenue bonds, (2) to acquire the land and existing buildings of complainants, and (3) to execute leases with complainants at rentals sufficient to provide for liquidation of principal and interest on the revenue bonds when due. The revenue bonds were to be secured by deed of trust on the property held by defendant, and the proceeds from the revenue bonds were to be deposited by defendant with a trustee, who would pay therefrom the cost of construction of new buildings.

After the decision upholding the statute was rendered in the trial court, defendant prayed and ultimately perfected an appeal to this Court. Five assignments of error have been filed, as follows:

"1. The Chancellor erred in holding that Chapter 333, Public Acts of 1969 (hereinafter 'the Act') does not violate Article II, Section 17 of the Constitution of the State of Tennessee, which section pro-

hibits an act from embracing more than one subject.

2. The Chancellor erred in holding that the Act did not provide for the giving or lending of the credit of a municipality to a corporation without the constitutionally required public referendum.

3. The Chancellor erred in holding that the Act was for a public purpose and that the construction of the project antedating the passage of the Act was irrelevant.

4. The Chancellor erred by holding that the Act's provision for tax-exempt status of interest on the bonds contemplated thereunder did not violate Article II, Section 29, of the Tennessee Constitution which requires the taxation of all property except that held and used for purely religious, charitable, educational, and the like, purposes.

5. The Chancellor erred in holding that the Act did not violate Article I, Section 3 of the Tennessee Constitution and the First Amendment of the United States Constitution."

The first assignment of error avers that the Act violates Article II, Section 17 of the Tennessee Constitution in that it embraces more than one subject. It is argued that the Act provides for (1) both health and educational facilities corporations, (2) a scheme for the raising of money through the issuance of bonds, (3) tax-exempt status for a particular class of bonds, and (4) the vesting of powers in municipalities to make gifts, sales, and leases of public land.

The portion of Article II, Section 17 of the Tennessee Constitution applicable here provides: * * * No bill shall become a law which embraces more than one subject, that subject to be expressed in the title. * * *"

The title of Chapter 333 of the Public Acts of 1969 is as follows:

"*An Act* to provide for the creation of health and educational facilities corporations and to define the powers, duties and authority thereof."

█ It is our view that the Act does not embrace two subjects merely because both health and educational facilities are dealt with. Rather, the subject of the Act is the creation of public corporations, with implementation of improvement of health and education being descriptive of the objectives of the corporations. This concept is aptly illustrated by the case of *Mayor and Aldermen of Knoxville v. Gass* (1907) 119 Tenn. 438, 104 S.W. 1084. In that case, the title of the challenged Act was as follows:

"An act to authorize municipalities of Tennessee having a population by the census of 1900, or any subsequent federal census, of not less than thirty thousand nor more than forty thousand, to issue $165,000.00 of coupon bonds, with which to fund the floating debts of said cities, to increase and improve the fire department, to widen the streets, and pay damages to property holders caused by the erection of viaducts and bridges; also to authorize said cities to issue $15,000.00 of coupon bonds with which to build sewers."

This Court, after reviewing a multitude of apposite cases, held the subject of the Act to be the issuance of

bonds for municipal purposes. It was further determined that the purposes expressed in the Act were all cognate and germane to the one general subject. On this subject the Court stated, "the generality of the title is no objection to it, so long as it is not made a cover to legislation incongruous in itself, and which, by no fair intendment, can be considered as having a necessary or proper connection. *Cannon v. Mathes*, 8 Heisk, 519 [504]."

Complainant further argues that the Act embraces more than one subject by providing for (1) "a scheme for the raising of money through the issuance of bonds," (2) "tax-exempt status for a particular class of bonds," and (3) the vesting of "certain powers in municipalities to make gifts, sales, and leases of public land."

As to this argument, the *Gass* case just cited, plus that of *West v. Industrial Development Board of City of Nashville, et al.* (1960) 206 Tenn. 154, 332 S.W.2d 201, provide ample authority that the "one subject clause" has not been violated because all of the provisions of the present Act are germane to its stated objective and purpose.

Proceeding to the third and fourth assignments of error it is insisted that the Board is not for a public purpose, and that the issuance of tax-exempt revenue bonds and the exemption of the Board's property from taxation is unconstitutional. It is argued that the exempt property will be owned, not by a municipality, but by a "corporation chartered under the Act," and that this precludes exemption of its property from taxation.

The Health and Educational Facilities Board, while it is a separate corporate entity, is merely an agency or instrumentality of Knox County, formed under a duly

adopted Resolution of Knox County. Section 11 of the Act specifically states that:

"* * * the corporation is hereby declared to be performing a public function in behalf of the municipality with respect to which the corporation is organized and to be a public instrumentality of such municipality. * * *"

The question of whether a public corporation is an arm or agency of a municipality, and its bonds thus exempt from taxation has been settled by this Court in the case of *West v. Industrial Development Board of City of Nashville, et al.,* supra.

It appears to be beyond question that the Board was created to perform a public service. The stated intention of the Legislature in passing the Act in question is "to promote the health and higher education of the people of this state." In view of the fact that this Court has held that public corporations organized to promote "the increase of industry within the state, and thereby reduce the evils attendant upon unemployment," are serving a public purpose, it is entirely logical to attribute this same status to the promotion of health and education in the state. See *Holly v. City of Elizabethton, et al.* (1951) 193 Tenn. 46, 241 S.W.2d 1001; *West v. Industrial Development Board of City of Nashville, et al.,* supra.

Thus, contrary to defendant's contention, the purpose is not "to establish, aid or maintain private business enterprises," but to promote health and education, and to combat the evils attendant upon the lack thereof.

Defendant, in its brief, argues that no public purpose is being served in that the commencement of Fort Sand-

ers Presbyterian Hospital's project antedates the passage of the Act. The reasoning is that the project would have been completed irrespective of the passage of the Act; and to the extent that the project benefits the public, that benefit would exist without the Act or the contemplated refinancing of this project.

In our view this is a sterile argument. The time of construction of a project would seem irrelevant to the constitutionality of the Act. The purpose of the Act is to promote public health and education. For obvious reasons, this aim would be achieved no less by the refinancing of a project already commenced than the financing of a new project. Also, this procedure clearly comes within the contemplation of the Act, for Section 18 provides that:

" * * * Projects may be acquired, purchased, constructed, reconstructed, improved, bettered and extended * * *."

Defendant's second assignment insists that the Act provides for the lending of the credit of a municipality to a corporation without a public referendum as required in Article II, Section 29 of the Tennessee Constitution. That Section of the Constitution, insofar as is relevant here, provides:

"* * * the credit of no County, City or Town shall be given or loaned to or in aid of any person, company, association or corporation, except upon an election to be first held by the qualified voters of such county, city or town, and the assent of three-fourths of the votes cast at said election. * * *"

The Act in question does not require the formation of a facilities corporation to be approved in a referendum,

but formation of the corporation is by a duly adopted resolution by the governing body; in this instance, Knox County. This Court has held, in *West v. Industrial Development Board of City of Nashville, et al.*, supra, that Article 2, Section 29 of the State Constitution requires a municipal referendum only in those cases where the credit of the municipality is to be given or loaned to a person, association, or corporation. Section 12 of the Act now under consideration prohibits the municipality's credit to be given or its taxing power invoked to make any payment on the bond issue of the corporation. This Section is as follows:

> "*Section 12. Be it further enacted,* That the municipality shall not in any event be liable for the payment of the principal of or interest on any bonds of the corporation, or for the performance of any pledge, mortgage, obligation or agreement of any kind whatsoever which may be undertaken by the corporation, and none of the bonds of the corporation or any of its agreements or obligations shall be construed to constitute an indebtedness of the municipality within the meaning of any constitutional or statutory provision whatsoever."

Defendant, however, insists that even though this Section purports to release the municipality from direct liability on a bond issue, the mortgage of public property as security for a bond issue is essentially equivalent to a lending of its credit.

As stated earlier in the opinion, the Board is but an arm or instrumentality of Knox County. The property in question, hospital facilities, is to be held by the Board for a public purpose. The property, under the agreement made between the Board and these complainants, is to be

mortgaged to secure the bond issue, the proceeds of which will be used to build and equip facilities which the Board, in turn, will lease to the private corporations.

Thus, this mortgaging of public property is not the equivalent of the municipality lending its credit to complainants.

It must be recognized that cases of this nature necessarily involve two dominant problematical features. The first is the overriding question of whether the legislative effort meets the test of being a constitutionally authorized governmental function. The second is whether or not there be any constitutional infirmity in the means and methods adopted by the legislation to accommodate the economic realities of money-raising by bond issue and sale. Obviously, such bonds must possess an attraction for the investor.

In the instant case we find that the system of legislation here admirably satisfies both the above considerations, amply within constitutional strictures.

It is further argued that the Act allows the Board to grant a lessee unlimited renewal options and even a purchase option on the facilities, the exercise of which could result in the "donation" of the property to a private corporation.

 This contention, it appears to us, is sophism, in the sense that it embodies a subtle fallacy, though by no means intended to deceive. In this connection, it is to be noted that the source of title of the corporate subsidiary of the County is the two hospital institutions, in consideration of performance by the aforementioned corporation of the dominant purpose of the public health plan.

It is no more than plain justice and right that, upon successful completion of the statutory purpose, the title may be restored to the original owners.

The fifth assignment of error maintains that the Act, at least as applied to the facts of this case, contravenes the "establishment of religion" clause of the First Amendment to the United States Constitution. Defendant argues that both complainants are affiliated with religious denominations which have certain "powers of control" over the respective hospital facilities. It is further argued that the Act permits the State to contribute financial assistance directly to the churches.

In determining this question, it should be noted that Public Act 333, in prescribing eligibility for participants provides in Section 1, the following:

" 'Hospital institution' means any private nonprofit institution authorized by law to provide hospital or nursing home facilities in the State of Tennessee.

'Institution for higher education' means any private nonprofit institution authorized by law to provide a program of education beyond the high school level in the State of Tennessee.''

Thus it is seen that the Act applies to *all* private nonprofit corporations providing health and/or educational services.

It is not argued that the purpose of either hospital is anything but that of providing hospital care and treatment on a nondiscriminatory basis.

One of the most significant cases involving an interpretation of the Establishment Clause is that of *Everson v. Board of Education of Ewing Tp., et al.* (1947) 330 U. S.

1, 67 S.Ct. 504, 91 L.Ed. 711. In that case, a New Jersey statute permitted the County of Mercer to pass a resolution authorizing reimbursement to parents for money expended by them for bus transportation of children to parochial schools. The Court, in holding the statute constitutional, upheld the enactment of the New Jersey Legislature that a public purpose would be served by using tax-raised funds to pay bus fares of all school children. Justice Black, speaking for the majority, stated:

> "* * * The fact that a state law, passed to satisfy a public need, coincides with the personal desires of the individuals most directly affected is certainly an inadequate reason for us to say that a legislature has erroneously appraised the public need."

And:

> "It is much too late to argue that legislation intended to facilitate the opportunity of children to get a secular education serves no public purpose. * * *"

We have heretofore determined that this Act has a constitutionally recognized public purpose, and that any private, nonprofit institution authorized by law to provide health and higher educational services in the state may be brought within this Act.

The exclusive purpose of this Act is not to establish or advance religious purposes, but to aid public health and education; and thus is not violative of the First Amendment to the United States Constitution.

A similar argument has been made to the effect that this Act violates Article 1, Section 3 of the Tennessee Constitution, which provides, in material part, as follows:

"* * * no preference shall ever by given, by law, to any religious establishment or mode of worship."

It is sufficient to say that the Act, by its own terms, precludes any "preference" of a religious establishment. The most that can be said is that it allows religion affiliated institutions to be placed on an equal basis with that of secular health and educational institutions.

It follows that all assignments of error are overruled and the decree of the trial court affirmed. Costs of this appeal are assessed against The Health and Educational Facilities Board of the County of Knox.

DYER, CHIEF JUSTICE, McCANLESS, JUSTICE, and JENKINS and SMITH, SPECIAL JUSTICES, concur.