THE STATE, EX REL. TAFT ET AL., *v.* CAMPANELLA, AUDITOR.

[Cite as State, ex rel. Taft, v. Campanella (1977);
51 Ohio App. 2d 237.]

238

(No. 37345—Decided March 28, 1977.)

*Mr. George I. Meisel* and *Mr. Robert H. Olson, Jr.*, for relator Board of Commissioners of Cuyahoga County.

*Mr. Isaac Schulz* and *Mr. John J. Whitney*, for relator Deaconess Hospital of Cleveland.

*Mr. John T. Corrigan*, prosecuting attorney, for respondent.

KRENZLER, P. J. This is an original action in mandamus initiated by the relators, the Board of Commissioners of Cuyahoga County, and Deaconess Hospital of Cleveland, a non-profit Ohio corporation, against the respondent, the Cuyahoga County Auditor.[1]

The events leading to this action are as follows: On November 22, 1976, the Board of Commissioners of Cuyahoga County adopted two resolutions. One was a "Purchase and Lease Resolution" and the other a "Bond Resolution."[2] By its terms the Purchase and Lease Resolution provides that Cuyahoga County will acquire by purchase the existing hospital facilities of Deaconess Hospital of Cleveland, located at 4229 Pearl Road, Cleveland, Ohio. The resolution also authorizes the improvement of such facilities and a

---

[1] One of the county commissioners at the time of the initiation of this lawsuit was succeeded by a new county commissioner who has been made a party to this action. Also, the county auditor at the time this lawsuit began has been succeeded by another county auditor who is now a party to this suit as successor-respondent.

[2] The two resolutions and the subsequent lease agreement are lengthy and comprehensive documents; therefore, we shall discuss only the relevant portions of these documents.

lease of those hospital facilities by the county to Deaconess Hospital. The Bond Resolution authorizes the issuance of $26 million of Cuyahoga County hospital-improvement, first-mortgage revenue bonds to finance the acquisition by purchase of the existing hospital facilities of Deaconess Hospital and to improve such facilities. Upon retirement of the bonds, the hospital is given an option to purchase the facilities for a nominal sum.

In the Purchase and Lease Resolution, the commissioners found that the acquisition and improvement of Deaconess Hospital and the leasing of the facilities will better provide for the health and welfare of the residents of the county by enhancing the availability, efficiency and economy of hospital facilities and will promote the public purposes stated in R. C. 140.02 and that the county will be duly benefited thereby. The commissioners found also that the consideration paid for the acquisition and the benefits to be provided to the county are fair considerations for the value and benefit to be derived for the county and its residents.

The Purchase and Lease Resolution also provides that a part of the proceeds from the sale of the bonds will be used to retire and release the existing first mortgage on the property in order that a new first mortgage can be placed on the property to secure the newly issued $26 million in bonds. Section 3 of the Purchase and Lease Resolution states that the county will pay a purchase price of $10,623,-967, which will be applied on behalf of the lessee to the payment of its outstanding indebtedness as provided in the lease.

The Bond Resolution provides for the pledge of and a lien on the hospital receipts for payment of the bonds and authorizes an indenture of mortgage providing for the payment of the debt service charges on the bonds and for securing such payments.

On November 24, 1976, the Cuyahoga County Auditor advised the commissioners that he was in receipt of their Bond Resolution and Purchase and Lease Resolution.

The auditor noted that the Bond Resolution states that an amount not to exceed $10,623,967 of the proceeds of the

bonds represents the county's costs in acquiring the existing hospital facilities known as Deaconess Hospital, that this acquisition cost is to be paid to a financial institution in order to retire the existing private debt of Deaconess Hospital, which debt is presently secured by a first mortgage on the existing hospital facilities to be acquired.

The auditor further stated that he did not question that the county may properly issue hospital revenue bonds under R. C. Chapter 140 to provide approximately $16 million for the proposed construction and remodeling of existing facilities or that the county may use revenue bond proceeds to purchase existing hospital facilities. He specifically questions whether the use of $10,623,967 to retire the existing debt of Deaconess Hospital constitutes a proper public purpose. The county auditor refused to perform the duty specified in the Bond Resolution and the Purchase and Lease Resolution or to draw drafts or warrants pursuant to R. C. 319.16, 321.12, and 321.15 or to certify the availablity of funds in accordance with R. C. 5705.41(D).

Pursuant to the foregoing resolutions, on December 4, 1976, the Cuyahoga County Commissioners entered into a Lease Agreement with Deaconess Hospital.

On December 21, 1976, the commissioners and Deaconess Hospital filed a complaint in mandamus against the auditor in which they allege that they had a clear and benefical interest in the auditor's performance of his clear and official duties pursuant to R. C. 140.06(J) and R. C. 2731.-02, and that the commissioners and Deaconess Hospital are proper parties to maintain an action in mandamus. The relators further allege that they are without an adequate remedy in the ordinary course of law and can only compel the respondent to perform his duties by way of a writ of mandamus. They pray that a writ of mandamus issue against the respondent in his official capacity as auditor requiring him to negotiate the sale of the bonds, certify the award to the county, approve the trustee under the indenture for bonds, arrange for the delivery of bonds, execute the bonds, and, as appropriate under R. C. 319.16, 321.12, 321.15 and 5705.41(D), draw appropriate drafts and warrants and certify the availability of funds for construction

contracts and take all other actions required of him under the Bond Resolution, the Purchase and Lease Resolution and the lease.

The respondent auditor in his answer maintains that the issuance of the bonds will not promote a public purpose as is required by R. C. 140.02 and that, therefore, he has no duty to perform pursuant to the authorizations set forth in the Purchase and Lease Resolution and the Bond Resolution.

After the complaint and answer were filed, the parties entered into stipulations. It was stipulated that Deaconess Hospital of Cleveland is a 301-bed, acute care general hospital, primarily serving southwest Cuyahoga County; that the Board of County Commissioners entered into the above-noted resolutions and lease on November 22, and December 6, 1976. Copies of the resolutions and lease were attached to the stipulations as Exhibits C, D and E.

It was stipulated that the fair market value of the existing facilities is $17 million. Appraisals of Edwin H. Smith and Richard G. Racek were attached to the stipulations as Exhibit F. It was also stipulated that approximately $10.6 million of the $26 million of proceeds of the sale of the bonds would be used to retire the hospital debt and release the existing first mortgage on the property and the remaining $15.4 million would be used for remodeling and construction of new and additional facilities.

The respondent contends that the Deaconess Hospital Project[3] proposed by the commissioners constitutes in substance an illegal refinancing by Deaconess Hospital by the use of county funds or credit because $10.6 million of county credit is being used to pay the debt of Deaconess Hospital and that this does not serve a public purpose and is not authorized by R. C. Chapter 140. The auditor further maintains that the transaction is in violation of Section 6, Article VIII, of the Ohio Constitution, which prohibits a county from using its funds or credit for a private interest.

The relators argue that the Deaconess Hospital Pro-

[3]The total transaction, encompassing the Purchase and Lease Resolution, the Bond Resolution, and the lease shall be referred to as the "Deaconess Hospital Project."

ject is in accordance with R. C. Chapter 140, is not a refinancing by Deaconess Hospital through the payment of a private debt of Deaconess Hospital with the county's funds or credit, and is for a public purpose authorized by R. C. Chapter 140. They maintain that the Deaconess Hospital Project is not prohibited by Section 6, Article VIII, of the Ohio Constitution because the county is not lending its credit to a private interest but is purchasing hospital facilities pursuant to R. C. Chapter 140. The relators argue that even if this project is considered a refinancing by Deaconess it would be valid because the authority granted to the county under R. C. Chapter 140 is very broad and permits refinancing. Relators also assert that the constitutional prohibition against the use of county credit for private purposes does not apply when a county's credit is used for a non-profit corporation whose primary function is for a public purpose such as operating a hospital. They maintain that the combination of a non-profit corporation, plus a public purpose, makes the prohibition of Section 6, Article VIII, of the Ohio Constitution inapplicable.

There are two issues to be resolved in the instant case. The first is whether or not there is existing statutory authority for the proposed Deaconess Hospital Project transaction. The second is whether or not the transaction constitutes a lending of the county's credit to a private interest in violation of Section 6, Article VIII, of the Ohio Constitution. In the instant case, we are not concerned with the terms of the lease, the quality of the revenue bonds, the decision of the commissioners to give Deaconess Hospital an option to purchase the facilities, nor the adequacy of the amount of the option price by which Deaconess Hospital may acquire the facilities after the bonds are retired.

We will first determine whether the Deaconess Hospital Project satisfies the statutory requirements of R. C. Chapter 140 and is for a public purpose. In deciding this, we must also determine whether the retirement of Deaconess Hospital first-mortgage revenue bonds of $10.6 million by the use of Cuyahoga County first-mortgage revenue bonds is a refinancing by Deaconess Hospital and, if so, whether it is permitted under R. C. Chapter 140.

A board of county commissioners may purchase, acquire, lease, appropriate, construct, enlarge, improve, and rebuild a county hospital or hospital building, or hospital facilities as defined in R. C. 140.01. R. C. 339.01.

Cuyahoga County and Deaconess Hospital are "hospital agencies" authorized to operate hospital facilities, with Cuyahoga County being a public hospital agency and Deaconess Hospital a non-profit hospital agency.[4]

The powers granted to the county under R. C. Chapter 140 are very broad. Two or more hospital agencies may enter into agreements for the acquisition, construction, reconstruction, rehabilitation, remodeling, renovating, enlarging, equipping and furnishing of hospital facilities or the management, operation, occupancy, use, maintenance and repair of hospital facilities and many other things. R. C. 140.03.

In addition, a public hospital agency may lease hospital facilities to one or more hospital agencies for use as a hospital facility upon such terms and conditions as are agreed upon by the parties. Such lease may be for a term of fifty years or less and may provide for an option for the lessee to renew for a term of fifty years or less. R. C. 140.05.

Prior to entering into such a lease, the governing body of any public hospital agency granting the lease must determine and set forth in a resolution that such lease will promote the public purpose stated in R. C. 140.02 and that

---

[4]"Section 140.01 Definitions.

"As used in Chapter 140. of the Revised Code:

"(A) 'Hospital agency' means any public hospital agency or any nonprofit hospital agency.

"(B) 'Public hospital agency' means any county, county hospital commission established pursuant to section 339.14 of the Revised Code, municipal corporation, joint township hospital district, or state or municipal university or college, operating or authorized to operate a hospital facility.

"(C) 'Nonprofit hospital agency' means a corporation or association not for profit, no part of the net earnings of which inures or may lawfully inure to the benefit of any private shareholder or individual, which has authority to own or operate a hospital facility or which provides or is to provide services to one or more other hospital agencies. * * *"

the lessor public hospital agency will be duly benefited thereby. R. C. 140.05(A). The stated public purpose of R. C. Chapter 140 is to provide for the

"* * * health and welfare of the people of the state by enhancing the availability, efficiency, and economy of hospital facilities and the services rendered thereby, by providing for cooperation of hospital agencies in the utilization of shared facilities and services to obtain economies in operation and more effective health service, facilitating participation of hospital agencies in federal financial assistance provided by Title IV of the 'Public Health Service Act,' 60 Stat. 1041 (1946), 42 U. S. C. 291, as amended, and by other federal programs for assistance in meeting the costs of hospital facilities or the financing thereof, providing efficient operation of hospital facilities through leasing to hospital agencies and facilitating the financing of hospital facilities to be available to or for the service of the general public without discrimination by reason of race, creed, color, or national origin * * *." R. C. 140.02.

The lease may also provide for the sale or transfer of title of the leased facilities pursuant to an option to purchase. R. C. 140.05(D).

A public hospital agency may also issue revenue obligations to pay the cost of hospital facilities. R. C. 140.06(A). The costs of hospital facilities means the costs of acquiring or constructing hospital facilities; costs of improving hospital facilities, including reconstructing, rehabilitating, remodeling, renovating, and enlarging; and the costs of equipping and furnishing such facilities, together with all financing costs, including engneering, architectural and other professional services. R. C. 140.01(F). Such revenue obligations are not general obligations of the public hospital agency but may be secured by a pledge of and lien on all or part of the hospital receipts. R. C. 140.06(C).

Having reviewed the relevant statutes, we will now consider whether the retirement of Deaconess Hospital first mortgage revenue bonds is an illegal payment of a private debt. Section 3 of the Purchase and Lease Resolution provides that the county will retire the

$10.6 million of Deaconess Hospital first-mortgage revenue bonds. Taken alone, it appears that the county is paying a private debt, but a review of the entire transaction demonstrates that Cuyahoga County is purchasing the assets of Deaconess Hospital with a stipulated value of $17 million for $10.6 million, the amount of the outstanding first-mortgage revenue bonds.

The county has authority under R. C. 140.03 to acquire or purchase existing hospital facilities. Naturally, when acquiring hospital facilities with outstanding debt which is secured by a mortgage, it is necessary to retire the debt in order to obtain the hospital facilities free and clear of all encumbrances. If the resolution had stated that the county would acquire the hospital facilities for $10.6 million free and clear of all encumbrances, the transaction would be lawful under R. C. Chapter 140, which authorizes the county to purchase existing hospital facilities. By stating that the county will acquire Deaconess Hospital for $10.6 million and pay off the existing first-mortgage revenue bonds and release the existing first mortgage is no more than saying that the county will purchase Deaconess Hospital for $10.6 million free and clear of all encumbrances. The language chosen by the commissioners creates a technical distinction without a difference.

The auditor interprets the language of Section 3 of the Purchase and Lease Resolution to mean that the Deaconess Hospital Project would involve the use of county funds or credit to refinance a private debt. To adopt this position would achieve an unreasonable result for it would mean that the county can purchase only existing hospital facilities that do not have outstanding debts. This position is not valid because the county is authorized by statute to purchase existing hospital facilities and this authority applies whether or not the existing facilities do or do not have debt. The fact that there is debt secured by a mortgage does not preclude the county from acquiring such property in accordance with the provisions of R. C. Chapter 140.

Financing is a method by which a business obtains funds or credit, either debt or equity, to be used for capi-

tal improvements or operating purposes. Refinancing means obtaining new or additional funds or to finance again.

The purchase of the hospital facilities by the county and the lease to Deaconess with an option to purchase from the county does not make this transaction a refinancing by Deaconess. Cuyahoga County proposes to issue $26 million of first-mortgage revenue bonds, $10.6 million of which will be used to acquire the Deaconess Hospital facilities. The county will take title and be the fee holder. The county will use $15.4 million of the proceeds from the sale of the bonds to repair and modernize the existing facilities and to construct new and additional facilities. The county will also have title to and own these new facilities. The county will then lease all of the facilities to Deaconess Hospital. The county will be the owner and lessor of the hospital facilities. Deaconess Hospital will be the lessee with an option to purchase the hospital facilities after the bonds are retired in approximately thirty-one years. If Deaconess Hospital does not exercise the option, the county will continue to own the hospital after the bonds are retired.

It is our conclusion that the transaction outlined above is not refinancing by Deaconess Hospital but is a method of financing the county's purchase and repair of existing facilities and construction of new hospital facilities which it will own.

We must next determine whether or not the Deaconess Hospital Project serves the public purpose set forth by R. C. 140.02. As required by R. C. 140.05(A), the Board of County Commissioners determined in the Purchase and Lease Resolution that the Deaconess Hospital Project will promote the public purposes of R. C. 140.02 by enhancing the availability, efficiency and economy of hospital facilities for the benefit of the residents of the county.

The Ohio Supreme Court has held that the determination of what constitutes a public purpose is primarily a function of the legislative body of the local governmental unit and that such determination will not be overruled by the courts except in instances where that determination is manifestly arbitrary or unreasonable. *Bazell* v. *Cincinnati*

(1968), 13 Ohio St. 2d 63; *State, ex rel. Gordon,* v. *Rhodes* (1951), 156 Ohio St. 81.

We conclude that the determination of the Board of County Commissioners that the Deaconess Hospital Project will promote a public purpose is not unreasonable or arbitrary as it has been widely held that the operation of health facilities is for a public purpose. *E. g., Board of County Commrs.* v. *Idaho Health Facilities Authority* (1975), 96 Idaho 498, 531 P. 2d 588; *Fort Sanders Presbyterian Hosp.* v. *Health & Educ. Facilities Bd.* (1970), 224 Tenn. 240, 453 S. W. 2d 771; *Kentucky Bldg. Comm.* v. *Effron* (1949), 310 Ky. 355, 220 S. W. 2d 836.

Since the Deaconess Hospital Project is a purchase by Cuyahoga County of an existing hospital facility for a public purpose, the transaction is lawful and valid under R. C. Chapter 140.

Even if the Deaconess Hospital Project is considered a refinancing by Deaconess, it would not be invalid under R .C. Chapter 140.

The primary purpose of R. C. Chapter 140 is to improve health care facilities. This purpose can be accomplished no less by the refinancing of an existing property than by financing a new property. Financing new hospital facilities and acquisitions of existing hospital facilities without existing debts is allowed under R. C. Chapter 140. Therefore, it is unreasonable to argue that the refinancing of existing hospital facilities with outstanding debt is not allowed under R. C. Chapter 140.

Ohio law does not contain a specific provision, either prohibiting or permitting refinancing of existing hospital facilities. R. C. Chapter 140, however, gives the county commissioners broad authority in regard to acquiring and operating hospital facilities. Such authority encompasses the refinancing of existing hospital facilities.[5]

It is our conclusion that the Deaconess Hospital Project satisfies the public purpose requirement of R. C. 140.02 and all of the other requirements of R. C. Chapter 140.

---

[5]See R. C. 140.01 (F) and R. C. 140.02.

The next major argument of the respondent is that the Deaconess Hospital Project involves the use of the county's credit for private interests in violation of Section 6, Article VIII, of the Ohio Constitution, which provides as follows:

"No laws shall be passed authorizing any county, city, town or township, by vote of its citizens, or otherwise, to become a stockholder in any joint stock company, corporation, or association whatever; or to raise money for, or to loan its credit to, or in aid of, any such company, corporation, or association: provided, that nothing in this section shall prevent the insuring of public buildings or property in mutual insurance associations or companies. Laws may be passed providing for the regulation of all rates charged or to be charged by any insurance company, corporation or association organized under the laws of this state or doing any insurance business in this state for profit."

The primary purpose of Section 6, Article VIII, is to prohibit the use of county funds or credit for private purposes which means that county funds or county credit shall not be used for economic gain by private interests.

It has been held that the issuance of revenue bonds by a governmental agency is the lending of the public agency's credit even though the bonds are not general obligation bonds. *State, ex rel. Saxbe,* v. *Brand* (1964), 176 Ohio St. 44. The *Brand* case was decided in interpreting Section 4, Article VIII, which is similar to Section 6, Article VIII, but involves the credit of the state of Ohio rather than the credit of the county.

It is clear that a county's funds or credit may not be used to finance a private purpose or a private interest. Purely governmental functions performed by non-private entities, however, may be financed by county funds or county credit.

Without restating all of the elements of the Deaconess Hospital Project, it is our conclusion that since the county will purchase and own the Deaconess Hospital facilities and will be the lessor under the terms of the lease, the Deaconess Hospital Project does not involve the use of the county's credit for a private interest. Since Cuya-

hoga County is a hospital agency as defined in R. C. 140.01, the "project" is governmental, not private. Therefore, the Deaconess Hospital Project is not in violation of Section 6, Article VIII.

As noted previously, the auditor maintains that the Deaconess Hospital Project in substance constitutes a refinancing of the hospital's debt and therefore is unconstitutional under Section 6, Article VIII.[6] We have concluded that this transaction does not constitute refinancing. However, even if this transaction is considered refinancing by Deaconess Hospital, it is not in violation of Section 6, Article VIII, because Deaconess Hospital is a nonprofit corporation whose primary purpose and function is to operate a hospital which is clearly for a public purpose. It is our view that a non-profit corporation whose primary function is for a public purpose is not prohibited from obtaining the benefit of government credit in the form of revenue bonds.[7] Therefore, if the Deaconess Hospital Project is considered refinancing, it is not in violation of Section 6, Article VIII, of the Ohio Constitution, as a lending of the county's credit to a private interest.

The issuance of a writ of mandamus in this case is proper because the relators have shown that the respondent has a clear legal duty to act and they do not have a plain and adequate remedy in the ordinary course of the law. Therefore, the writ of mandamus will be issued.

*Writ allowed.*

CORRIGAN and PARRINO, JJ., concur.

---

[6] If the auditor's argument in regard to the constitutional prohibition is valid, a constitutional amendment would be required which would permit a county to lend its credit by issuance of revenue bonds on behalf of a nonprofit corporation whose primary function is a public purpose such as operating a hospital. This would be similar to Section 13, Article VIII, of the Ohio Constitution, which authorizes the use of a county's credit for private business through the issuance of industrial revenue bonds as provided for in R. C. Chapter 165.

[7] This holding is limited to revenue bonds and does not apply to general obligation bonds.