THE STATE, EX REL. RYAN, *v.* CITY COUNCIL OF GAHANNA ET AL.

[Cite as State, ex rel. Ryan, *v.* Council of Gahanna (1984),
9 Ohio St. 3d 126.]

(No. 83-763—Decided February 1, 1984.)

*Mr. Ronald B. Noga,* for relator.

*Messrs. Hall, Riddel & Weber, Mr. Peter H. Riddel, Peck, Shaffer & Williams, Mr. Thomas A. Luebbers* and *Mr. Dennis G. Schwallie,* for respondents.

CLIFFORD F. BROWN, J. Section 6, Article VIII of the Ohio Constitution prohibits a municipal corporation from entering into a joint venture with private corporations or associations. The section further prohibits the extension of credit by a municipality to any private corporations or associations.[1]

---

[1] "No laws shall be passed authorizing any county, city, town or township, by vote of its citizens, or otherwise, to become a stockholder in any joint stock company, corporation, or association whatever; or to raise money for, or to loan its credit to, or in aid of, any such company, corporation, or association * * *." Section 6, Article VIII of the Ohio Constitution.

In *Walker* v. *Cincinnati* (1871), 21 Ohio St. 14, 54, this court expressing its interpretation of Section 6, stated that the section "forbids the union of public and private capital or credit in any enterprise whatever."

Since the *Walker* decision an exception has been carved out of Section 6, Article VIII. Section 13, Article VIII of the Ohio Constitution provides for the suspension of the prohibitions of Section 6 with some limitation. Section 13 provides in pertinent part:

"To create or preserve jobs and employment opportunities, to improve the economic welfare of the people of the state, * * * it is hereby determined to be in the public interest and a proper public purpose for the state or its political subdivisions, taxing districts, or public authorities, its or their agencies or instrumentalities, or corporations not for profit designated by any of them as such agencies or instrumentalities, to acquire, construct, enlarge, improve, or equip, and to sell, lease, exchange, or otherwise dispose of property, structures, equipment, and facilities within the State of Ohio for industry, commerce, distribution, and research, to make or guarantee loans and to borrow money and issue bonds or other obligations to provide moneys for the acquisition, construction, enlargement, improvement, or equipment, of such property, structures, equipment and facilities. Laws may be passed to carry into effect such purposes and to authorize for such purposes the borrowing of money by, and the issuance of bonds or other obligations of, the state, or its political subdivisions, * * * and to authorize the making of guarantees and loans and the lending of aid and credit, which laws, bonds, obligations, loans, guarantees, *and lending of aid and credit shall not be subject to the requirements, limitations, or prohibitions of any other section of Article VIII, or of Article XII, Sections 6 and 11, of the Constitution, provided that moneys raised by taxation shall not be obligated or pledged for the payment of bonds or other obligations issued or guarantees made pursuant to laws enacted under this section.*" (Emphasis added.)

Sections 6 and 13 of Article VIII are clear in their prohibitions and exceptions. Respondents argue that the industrial park project involved here is an urban redevelopment or renewal project and therefore outside the scope of Sections 6 and 13. In *State, ex rel. Bruestle,* v. *Rich* (1953), 159 Ohio St. 13 [50 O.O. 6], the court declared the clearance of blighted slum areas to be a public purpose. In such cases the use of public moneys to purchase the land and clear it was not in violation of Section 6, Article VIII. In the present case, respondents contend that since they are clearing a vermin infested, blighted area and redeveloping it as an industrial park they are involved in a public purpose and not in a joint venture with private corporations.

Respondents further argue that their project is not a joint venture because the anticipatory notes and the future bonds were for the purchase of land and its development, not an extension of credit to the private corporations which were to later occupy the property as tenants. This court must, however, look to the realities of this project. Respondents purchased the property with the intent of developing it so that the private corporations

would have a place to locate within the city of Gahanna. By respondents' own admissions it was necessary for them to undertake this development rather than wait for private concerns to purchase and develop the land because it was in such disrepair.

This action involves a municipal corporation which has purchased and developed land for an industrial park, through municipal notes, which no private developer would have been able to profitably develop. The respondents have leased the property financed by the notes, which were issued in anticipation of long-term bonds, at a favorable rate to private corporations. This is as much a joint enterprise as if the city of Gahanna had given the money directly to the corporations to develop the land, to construct their buildings and to carry on their activities in the industrial park. To assert that this is not a joint venture between a municipal corporation and private corporations is unrealistic.

The elimination of a supposed blight by the city of Gahanna does not make this project an urban renewal project. The project is an acquisition and construction of property within the language of Section 13, Article VIII. The respondents must comply with Section 13 because of the joint venture between the municipal corporation and private corporations or associations.

The crux of this case is the form of the anticipatory notes issued by the respondents and the form of the bonds they intend to issue for the long-term funding of this industrial park. Ordinance No. 58-82, which provided for the issuance of the bonds or notes for the funding of this project, was enacted June 16, 1982, and provided that the notes were to be the full obligation of the city and the funds derived from a tax levy were to be placed in a separate and distinct fund for payment of the obligation. It is this pledge of tax revenue which makes the notes or bonds issued by the respondents an unconstitutional act. If only the full faith and credit of the city of Gahanna had been pledged to repay the notes or bonds, this would have constituted sufficient compliance with Section 13, Article VIII to allow this project to withstand a constitutional challenge.

There are ways in which respondents could have avoided this constitutional challenge to their note and bond issuance. They could have organized a community urban redevelopment corporation pursuant to R.C. Chapter 1728 to act as purchaser or lessor of the city land. This is the procedure which is utilized as a preferred form of urban renewal and redevelopment in many municipalities throughout the state. Respondents also could have issued revenue bonds for the funding of the project pursuant to R.C. Chapter 725 or 761.[2]

A municipal corporation may not enter into a joint venture with, nor extend credit to, a private corporation or association where such venture or extension is supported by the issuance and sale of bonds or notes, guaranteed

---

[2] Other Ohio Revised Code sections provide means for joint interaction between municipal corporations and the private sector. See R.C. Chapters 165 and 1724.

by earmarked tax revenue of the municipal corporation. Section 13, Article VIII allows for such joint ventures for the purpose of economic development, so long as "moneys raised by taxation * * * [are] not * * * obligated or pledged for the payment of bonds * * *."

The Supreme Court of Ohio has long expressed its intention to enforce the provisions of Section 6, Article VIII, forbidding municipal and private joint ventures. See *Alter* v. *Cincinnati* (1897), 56 Ohio St. 47. However, this court also has recognized that necessary interaction can occur between municipalities and the private sector in the development of urban areas when the municipal corporations undertake the projects within the terms of the Constitution and/or the Ohio Revised Code. See *Walker* v. *Cincinnati, supra*; *State, ex rel. Bruestle,* v. *Rich, supra*; *State, ex rel. Eichenberger,* v. *Neff* (1974), 42 Ohio App. 2d 69 [71 O.O.2d 443]. Our decision today will not adversely affect municipalities in their efforts to finance much-needed urban renewal and economic development projects.

It was never argued herein that urban renewal and economic development are not "proper public purposes." To the contrary, participation in such projects by local governments has long been given legislative recognition and encouragement. However, governmental involvement in financing these projects creates a potential for violation of the constitutional prohibition against the joinder of public and private enterprise contained in Section 6, Article VIII of the Ohio Constitution. The issue raised in this case, and one which must be dealt with by all municipalities undertaking such projects, is whether the type of funding employed complies with constitutional requirements.

Recognizing the constitutional restraints as well as the realities which require municipalities to become involved in financial support for urban renewal and economic development projects, the General Assembly has enacted numerous statutes, as previously discussed, which permit the financing of such projects without colliding with the constitutional prohibition against joinder of public and private enterprise. Indeed, an exception is provided within the Constitution itself through Section 13, Article VIII of the Ohio Constitution previously explained.

Constitutional prohibitions cannot be treated casually or ignored, thus compelling our result today. The existence of a "proper public purpose" does not justify the issuance of bonds without regard to the Constitution. Nor does the recognition that certain constitutional restraints exist justify creating a false sense of alarm that such projects may lose their viability, when constitutionally permissible schemes are available and adequate.

Municipalities will not be doomed to ruin by virtue of our decision today — they will only be admonished to pay proper consideration to the law when planning their urban renewal or economic development projects. Had the city of Gahanna done so, it would have employed Section 13, Article VIII of the Ohio Constitution as the basis for its project which would have authorized its general obligation bonds, and the city would have omitted the provision in its funding ordinance which pledged funds derived from a tax levy for their pay-

ment. This was and is still entirely possible. The tax authorized by the ordinance has never been levied and is apparently unnecessary. The deletion of that clause from the ordinance would cure the constitutional defect herein and preserve the viability of Gahanna's project.

This court, therefore, orders for the reasons hereinbefore stated, that a writ issue compelling respondents to comply with the provisions of Sections 6 and 13 of Article VIII of the Ohio Constitution. It is further ordered that the respondents are restrained from issuing the bonds or notes until they clearly state on the face thereof that such bonds or notes are not guaranteed by nor payable from specially designated tax moneys authorized by the respondents.

*Writ allowed.*

CELEBREZZE, C.J., W. BROWN, SWEENEY, HOLMES and J. P. CELEBREZZE, JJ., concur.

LOCHER, J., concurs separately.

LOCHER, J., concurring. The ramifications of today's decision strike to the very soul of attempts by our cities to combat the malignant cancer of urban blight. Urban renewal efforts, such as those contemplated by the city of Gahanna, are one of the most potent weapons in our cities' attempts to excise the growth of stinking slums and decrepit dumps.

I write to express my disappointment that the procedures utilized by Gahanna cannot be squared with our state Constitution. The "harm" allegedly caused to the taxpayers of Gahanna is far outweighed by the benefits of this urban renewal undertaking. Nevertheless, the constitutional prohibition is clear.

The municipalities of Ohio need not despair, however, in their efforts to eliminate urban blight. As the majority opinion points out, other methods of financing these projects are available. Affidavits filed with this court indicate that two methods have been utilized with some success: General obligation bonds and the R.C. Chapter 1728 "Community Urban Redevelopment Corporation." The latter may be especially attractive since any improvements are tax exempt for a period of time, R.C. 1728.10, and the corporation may receive federal aid, R.C. 1728.05. Had these methods not been available, municipalities would be hard-pressed to fund such projects. As the affiants make clear, revenue bonds are not feasible in these circumstances since there is no income stream certainty.

Notwithstanding today's opinion, the attraction of new commerce and residents to the cities shall be effected through urban renewal efforts based upon established formalities designed to ameliorate the otherwise harsh dictates of constitutional necessity. I urge the cities of Ohio to follow these formalities carefully to avoid the problems of constitutional form that compels today's result over the substance of laudable urban renewal efforts.