THE STATE, EX REL. TOMINO, *v.* BROWN.

[Cite as State, ex rel. Tomino, *v.* Brown (1989), 47 Ohio St. 3d 119.]

(No. 89-1350 — Submitted December 12, 1989 — Decided December 29, 1989.)

*Calfee, Halter & Griswold, Mark I. Wallach, David S. Goodman* and *Kathryn K. Vanderwist,* for relator.

*Monroe, Zucco & Kaselak, Donald K. Barclay* and *Jules N. Koach,* for respondent.

*Per Curiam.* To issue a writ of mandamus, we must determine that relator has a clear right to the relief prayed for, that respondent is under a clear legal duty to perform the official act sought by relator, and that relator has no plain and adequate remedy in the ordinary course of law. *State, ex rel. Berger,* v. *McMonagle* (1983), 6 Ohio St. 3d 28, 6 OBR 50, 451 N.E. 2d 225. Moreover, we will construe constitutions as well as statutes as necessary to discover whether the duty exists. See *State, ex rel. Melvin,* v. *Sweeney* (1950), 154 Ohio St. 223, 43 O.O. 36, 94 N.E. 2d 785.

The ordinance clearly requires respondent to issue the Certificate of Award. However, he argues that he had no clear duty to act because the ordinance authorizes a lending of the city's credit to the contractors who construct the housing units and to the purchasers of the units. He further argues that the ordinance does not come under either of the express exceptions to Section 6 of Article VIII contained in Sections 13 (lending of state and local governmental credit for industrial or commercial development authorized under certain conditions) and 14 (lending of *state* credit to private lenders authorized for certain housing costs).

Section 6, Article VIII, Ohio Constitution provides in part:

"No law shall be passed authorizing any county, city, town or township, by vote of its citizens, or otherwise, to become a stockholder in any joint stock company, corporation, or association whatever; or to raise money for, or loan its credit to, or in aid of, any such company, corporation, or association * * * ."

Relator argues that the ordinance does not violate Section 6 and, therefore, does not need exception under either Section 13 or 14 of Article VIII.

Respondent does not argue that relator has an adequate legal remedy. Moreover, historically, this court has accepted bond cases to decide constitutional questions. See *State, ex rel. Bruestle,* v. *Rich* (1953), 159 Ohio St. 13, at 20-21, 50 O.O. 6, at 10, 110 N.E. 2d 778, at 783-784. Therefore, we decide only the question of respondent's clear legal duty under Section 6 of Article VIII.

We hold that the ordinance does not lend the city's credit in violation of Section 6 of Article VIII, Ohio Constitution, and that, consequently, respondent has a clear legal duty to issue the Certificate of Award.

Relator relies primarily on *State, ex rel. Bruestle,* v. *Rich, supra.* In that case, we upheld the constitutionality of a Cincinnati urban renewal program against numerous constitutional challenges, including one that it violated Section 6 of Article VIII. The ordinance at issue there outlined a "blighted area" in the city and authorized the city to contract with the federal government for a grant to acquire property in and redevelop the area, and sell, lease or retain the improved property for city use, all in accordance with an overall plan for the area. Revenue notes were issued to acquire the property. We held that there would be no lending of credit to ultimate purchasers of the improved property because these sales were to be at fair market value.

Conversely, in *State, ex rel. Ryan,* v. *Council of Gahanna* (1984), 9 Ohio St. 3d 126, 9 OBR 377, 459 N.E. 2d 208, the city proposed to improve industrial property and lease it to industry at a "favorable rate," *i.e.,* below market, and we held that the proposal violated Section 6 of Article VIII.

Relator also relies on *State, ex rel. Taft,* v. *Campanella* (1977), 51 Ohio App. 2d 237, 5 O.O. 3d 367, 368 N.E.

2d 76, affirmed (1977), 50 Ohio St. 2d 242, 4 O.O. 3d 423, 364 N.E. 2d 21, in which the Court of Appeals for Cuyahoga County approved issuance of revenue bonds to enable the county to acquire a hospital, retire its existing debt, improve the hospital, and lease it back to the nonprofit organization from which it was acquired. In that case, the court of appeals held that there was no lending of credit because the county, which would become the owner-lessor of the property, was a public agency and the lessee was a nonprofit corporation whose primary function was a public purpose — providing hospital services. The appellant did not raise the lending-of-credit issue on appeal to this court.

Section 6 of Article VIII has long been construed to prohibit a *"\* \* \* business partnership* between a municipality \* \* \* and individuals or private corporations or associations. It forbids the union of public and private capital or credit in any enterprise whatsoever.*"* (Emphasis added.) *Alter* v. *Cincinnati* (1897), 56 Ohio St. 47, 63, 46 N.E. 69, 70, quoting *Walker* v. *Cincinnati* (1871), 21 Ohio St. 14, 54.

Respondent argues that, because a purchaser may purchase a unit below its "Minimum Sale Price," *i.e.,* its cost, after it has been on the market for only ten days, there is a loan of credit to the purchaser.

Relator argues that because the units will be sold at market prices, there will be no such lending of credit.

We find that there will be a lending of the city's credit to purchasers of the units. However, since this lending of credit is for a public welfare purpose, and not a business purpose, it is not prohibited by Section 6 of Article VIII.

First, we find that the ability to purchase city-subsidized housing is a loan of the city's credit to purchasers. In *State, ex rel. Ryan,* v. *Council of Gahanna, supra,* we held that city leases at below-market rates constituted a lending of credit. We see no difference between subsidized leases and subsidized purchase prices.

That purchasers of the housing units are subsidized is obvious. First, municipal bonds are generally marketed at a lower rate than commercial bonds because they are exempt from federal and state income taxes. However, even if this were not true, in the instant case contractors' Local Letters of Credit insure the city for any amount that units sell for below Minimum Sale Price. Moreover, the city does not need profits from this project to remain a going concern, as would a private developer. These are powerful forces potentially affecting the sale price of these units. Therefore, although the units may technically be sold at market prices, the ability of the city to affect the market is substantial.

However, Section 6 of Article VIII prohibits joint business ventures. This project provides subsidized housing to individuals, and its public purpose is conceded by respondent.

In *State, ex rel. Dickman,* v. *Defenbacher* (1955), 164 Ohio St. 142, 57 O.O. 134, 128 N.E. 2d 59, we upheld the constitutionality of state appropriations to veterans' groups for veterans' welfare, under Section 4 of Article VIII, which prohibits lending of the state's credit. A majority of the court upheld the appropriations to these private associations because of the public purpose behind the appropriations — aiding veterans and promoting patriotism.

Similarly, in *State, ex rel. Taft,* v. *Campanella, supra,* the Court of Appeals for Cuyahoga County upheld the purchase, refinancing, and lease-back arrangements of a hospital because the agency to which credit was lent was a nonprofit association, and the ultimate

purpose, providing public hospital services, was a recognized public purpose.

If indirect subsidies to nonprofit associations for the use of certain beneficiaries for a public purpose are not prohibited by Sections 4 and 6 of Article VIII, then direct subsidies to the beneficiaries should not be prohibited either. Historically, Sections 4 and 6 of Article VIII have not been applied to programs undertaken for public welfare. Rather, these sections have been uniformly held to prohibit governmental involvement only in ventures that subsidize commerce or industry. See Gold, Public Aid to Private Enterprise Under the Ohio Constitution: Sections 4, 6, and 13 of Article VIII in Historical Perspective (1985), 16 U. Tol. L. Rev. 405.

*State, ex rel. Brown,* v. *Beard* (1976), 48 Ohio St. 2d 290, 2 O.O. 3d 438, 358 N.E. 2d 569, might appear to prohibit lending credit for a welfare purpose but, in fact, it does not. The case involved a state program to construct low and moderate income housing. The law authorizing the program was enacted before adoption of Section 14 of Article VIII.

Under the program, the state would issue revenue bonds, which would provide funds for mortgage loans to developers at below-market rates. The state tacitly acknowledged that this was a lending of its credit, but claimed it was an exception to the prohibition of Section 4 of Article VIII, allowed under Section 13 of Article VIII, because it benefited commerce and industry.

This court held that the benefit to commerce and industry was not direct, and that providing moderate and low cost housing was not sufficiently related to commerce and industry to come within the exception of Section 4 allowed by Section 13.

Thus, *Beard* can be interpreted as saying lending of credit for subsidized housing is prohibited by Section 4 of Article VIII and, by implication, by Section 6. However, it was not the aid to the ultimate recipients of the low and moderate cost housing that was fatal to the program in *Beard,* but the lending of credit to the developers.

In the instant case, we discern no lending of credit to the contractors, as respondent argues, but only to the ultimate purchasers. The city will receive competitive bids for construction contracts. To the extent the program is underwritten by the required Local Letters of Credit, the contractors may be said to lend credit to the city, the benefit of which the city may ultimately pass on to purchasers of units. However, this arrangement is not prohibited by Section 6 of Article VIII.

Therefore, we hold that Ordinance No. 742-89 is essentially police-power legislation undertaken for the public welfare, the public purpose of which is conceded. In public welfare legislation that confers tangible subsidies or other benefits, there may always be said to be a lending of credit if the benefit conferred is considered to be "credit." But, Sections 4 and 6 of Article VIII have historically been interpreted to prohibit only governmental and private joint business ventures, not public welfare subsidies.

Lending credit to purchasers of subsidized housing is such a subsidy, not a business venture. Accordingly, it is not prohibited by Section 6 of Article VIII, Ohio Constitution, and we grant the writ of mandamus.

*Writ allowed.*

MOYER, C.J., SWEENEY, HOLMES, DOUGLAS, WRIGHT, H. BROWN and RESNICK, JJ., concur.