*462 Cupp, J.,
dissenting.
{¶ 31} Much of what a metropolitan housing authority does, or is authorized to do, fits easily within the statutory definition of “governmental function” for purposes of political subdivision liability immunity. However, not everything does.
{¶ 32} In my view, the reach of the statutory phrase that the majority opinion relies upon, “[ujrban renewal projects and the elimination of slum conditions,” does not extend so far as to encompass the ordinary day-to-day conduct of a metropolitan housing authority acting as a landlord in operating and maintaining residential rental properties. Such activities are indistinguishable from those engaged in by private landlords. Consequently, I would affirm that part of the judgment of the court of appeals that concludes that the operation and maintenance of residential rental properties are proprietary functions within the meaning of R.C. 2744.01(G)(1). On remand, the trial court should consider whether any of the immunities applicable to a political subdivision’s proprietary functions apply, with the exception of whether civil liability is expressly imposed by the Landlord Tenant Act of R.C. Chapter 5321. On that issue, I conclude, as does the majority opinion, that civil liability is not “expressly” imposed, as required by R.C. 2744.02(B)(5).
{¶ 33} The operation and maintenance of residential rental properties are not specifically identified as governmental functions within the R.C. 2744.01(C)(2) listing of such functions. They also do not meet the R.C. 2744.01(C)(2)(q) criteria of “[u]rban renewal projects and the elimination of slum conditions.” Urban renewal is described as the process of “acquiring, clearing, and redeveloping slums or blighted areas by the use of the power of the government.” Gotherman, Babbit & Lang, 1 Local Government Law (2004) 888, Section 26:15. Although there is no Revised Code definition of “elimination of slum conditions,” the terms “blighted area” and “slum” are defined as areas in which the sound growth of the state or a political subdivision of the state is impaired or arrested, the provision of housing accommodations is retarded, economic or social liability is created, or the public health, safety, morals, or welfare is threatened. See R.C. 3735.40(B), adopting the definition set forth in R.C. 1.08.
{¶ 34} Urban renewal projects and similar programs for the purpose of eliminating slum conditions are mentioned or described in various parts of the code, such as R.C. Chapter 163 (appropriation of property by the state government), R.C. Chapter 725 (financing municipal urban renewal projects with revenue bonds), R.C. Chapter 1728 (community urban redevelopment corporations), and R.C. Chapter 5709 (enterprise zones). Condemnation and appropriation are common governmental actions taken in connection with urban renewal. See, e.g., Kim’s Auto & Truck Serv., Inc. v. Toledo, 172 Ohio App.3d 1, 2007- *463 Ohio-2260, 872 N.E.2d 1245; Alliance v. Zellweger (Mar. 12, 2001), Stark App. Nos. 2000CA0093 and 2000CA0094, 2001 WL 256319; Farra v. Dayton (1989), 62 Ohio App.3d 487, 576 N.E.2d 807. Moreover, such governmental actions generally do not run afoul of Section 6, Article VIII, Ohio Constitution, which prohibits a political subdivision from lending its credit. See, e.g., State ex rel. Tomino v. Brown (1989), 47 Ohio St.3d 119, 549 N.E.2d 505; State ex rel. Bruestle v. Rich (1953), 159 Ohio St. 13, 50 O.O. 6, 110 N.E.2d 778.
{¶ 35} None of the foregoing, however, encompasses the ongoing conduct of being a residential landlord. The processes of the actual daily, ongoing operation and maintenance of residential rental property, which may occur following the completion of an urban renewal project, do not constitute the undertaking of an urban renewal project or slum elimination. Although ongoing operation and maintenance of residential rental property may take place as a result of the decision to engage in an “urban renewal project or the elimination of slum conditions,” they do not equate to either.
{¶ 36} Similarly, the operation and maintenance of residential rental property are not functions that meet any of the three criteria of R.C. 2744.01(C)(1) so as to be considered a governmental activity. I am persuaded by the concise conclusion reached by the appellate court in Parker v. Dayton Metro. Pious. Auth. (May 31, 1996), Montgomery App. No. 15556, 1996 WL 339935, upon which the appellate court in this instant case relied:
{¶ 37} “Maintenance of a public housing facility is voluntary but it is not a function that is imposed on the state as an obligation of sovereignty. Its benefits are conferred only on the limited part of the population that uses it. The activity promotes the public peace, health, safety, and welfare; however, it is a function which involves activities that are customarily engaged in by nongovernmental persons, in this instance private landlords who rent residential premises to tenants.”
{¶ 38} Consequently, I would hold that the operation and maintenance of residential rental property are proprietary functions within the meaning of R.C. 2744.01(G)(1) and that, unless one of the immunities applicable to proprietary functions applies, there remains in dispute a genuine issue of material fact regarding the presence of the smoke alarm within the residential unit.
{¶ 39} Finally, even if the majority is correct that a metropolitan housing authority’s conduct is a governmental function under its “[ujrban renewal projects and the elimination of slum conditions” authority, I agree with that portion of Justice O’Donnell’s dissent that states that it is premature for this court to determine whether the LMHA’s individual residential rental properties fall within *464 the “used in connection with the performance of a governmental function” exception to immunity contained in R.C. 2744.02(B)(4).
Joseph F. Salzgeber, for appellee.
Stumphauzer, O’Toole, McLaughlin, McGlamery & Loughman Co., L.P.A., Dennis M. O’Toole, and Daniel D. Mason; and Rawlin Gravens Co., L.P.A., and Terrance P. Gravens, for appellant.
Willacy, LoPresti & Marcovy and Aubrey B. Willacy, urging reversal for amicus curiae, Cuyahoga Metropolitan Housing Authority.