MOORE, ADMR., APPELLEE, *v.* LORAIN METROPOLITAN HOUSING

AUTHORITY, APPELLANT, ET AL.

[Cite as *Moore v. Lorain Metro. Hous. Auth.*,

121 Ohio St.3d 455, 2009-Ohio-1250.]

*Political subdivisions — Immunity from suit — R.C. Chapter 2744 — Metropolitan housing authority is a "political subdivision" for purposes of sovereign immunity — R.C. 2744.01(C)(2) — Operation of metropolitan housing authority is governmental function.*

(Nos. 2007-2106 and 2008-0030 — Submitted October 8, 2008 — Decided March 25, 2009.)

APPEAL from and CERTIFIED by the Court of Appeals for Lorain County, No. 06CA008995, 2007-Ohio-5111.

———————————

SYLLABUS OF THE COURT

The operation of a public housing authority is a governmental function under R.C. 2744.01(C)(2) for purposes of political subdivision immunity under R.C. Chapter 2744.

———————————

LANZINGER, J.

{¶ 1} The Ninth District Court of Appeals certified that a conflict exists between its judgment in this case and the judgments of other appellate districts[1] on whether operation of a public housing authority is a proprietary or a

---

1. The conflicting cases are *Rhoades v. Cuyahoga Metro. Hous. Auth.,* 8th Dist. No. 84439, 2005-Ohio-505; *McCloud v. Nimmer* (1991), 72 Ohio App.3d 533, 595 N.E.2d 492 (8th District); *Jones v. Lucas Metro. Hous. Auth.* (Aug. 29, 1997), 6th Dist. No. L-96-212, 1997 WL 543049; and *Country Club Hills Homeowners Assn. v. Jefferson Metro. Hous. Auth.* (1981), 5 Ohio App.3d 77, 5 OBR 189, 449 N.E.2d 460.

governmental function within the meaning of Ohio's sovereign-immunity statutes. We determined that a conflict exists and also accepted the discretionary appeal on the issues of whether R.C. 2744.02(B)(4) and (B)(5) apply as exceptions to the public housing authority's immunity. We hold that the operation of a public housing authority is a governmental function under R.C. 2744.01(C)(2) rather than a proprietary function and remand for the trial court to determine whether the R.C. 2744.02(B)(4) exception to immunity applies.

### I. Case Background

**{¶ 2}** Appellee, Danielle Moore, and her four children lived at 106 South Park Street, Oberlin, Ohio, in an apartment owned by appellant, the Lorain Metropolitan Housing Authority ("LMHA"). On the evening of October 19, 2003, Moore left to run errands, leaving Derrick Macarthy, the father of three of the four children, in the apartment with them. One of the children started a fire in a bedroom while Macarthy was sleeping on the living room couch. Macarthy and two of the children escaped, but Dezirae Anna Nicole Macarthy and D'Angelo Anthony Marquez Macarthy were killed in the fire.

**{¶ 3}** On October 12, 2004, Moore, individually and in her capacity as the administrator of the estates of Dezirae and D'Angelo Macarthy, and in her capacity as the parent and next friend of the deceased children's siblings Jamar Moore and Deilani Macarthy, filed a lawsuit against defendants LMHA, its executive director Homer Verdin, and other unknown employees, for the wrongful deaths of Dezirae and D'Angelo. Moore claimed that because LMHA removed the apartment's only working smoke detector and negligently failed to replace it, Derrick Macarthy did not wake in time to rescue two of the children.

**{¶ 4}** The trial court noted in its findings of fact that a police officer on the scene believed that Derrick Macarthy's behavior indicated that he was under the influence of cocaine at the time of the fire and that an outside agency,

conducting an annual inspection of the premises two weeks before the fire, reported that there was a working smoke detector in Moore's unit.

{¶ 5} The trial court granted summary judgment to the defendants[2] on the grounds that LMHA was a political subdivision entitled to immunity pursuant to R.C. Chapter 2744. The court found that the operation of a public housing authority is a governmental function and that none of the exceptions to immunity, and particularly R.C. 2744.02(B)(4), applied.

{¶ 6} On appeal to the Lorain County Court of Appeals, Moore argued that the trial court erroneously found that LMHA performs a governmental function. The court of appeals agreed, reversing the summary judgment and remanding the case for further proceedings. *Moore v. Lorain Metro. Hous. Auth.,* Lorain App. No. 06CA008995, 2007-Ohio-5111. We accepted LMHA's discretionary appeal in conjunction with the certified conflict.

## II. Legal Analysis

### A. *Political Subdivision Immunity*

{¶ 7} The General Assembly enacted the Political Subdivision Tort Liability Act, codified at R.C. Chapter 2744, in 1985 in response to this court's abolishment of common-law sovereign immunity in *Haverlack v. Portage Homes, Inc.* (1982), 2 Ohio St.3d 26, 2 OBR 572, 442 N.E.2d 749. *Cramer v. Auglaize Acres*, 113 Ohio St.3d 266, 2007-Ohio-1946, 865 N.E.2d 9. The Act sets forth the defenses and immunities available to political subdivisions in civil actions for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision in connection with a governmental or proprietary function. R.C. 2744.02(A)(1). The Act also provides exceptions to immunity in specified circumstances. See R.C. 2744.02(B).

---

2. Only LMHA remains a party on appeal.

**{¶ 8}** A political subdivision is "a municipal corporation, township, county, school district, *or other body corporate and politic* responsible for governmental activities in a geographic area smaller than that of the state." (Emphasis added.) R.C. 2744.01(F). LMHA is a metropolitan housing authority, defined in R.C. 3735.31: "A metropolitan housing authority created under sections 3735.27 to 3735.50 of the Revised Code, constitutes a body corporate and politic." The parties do not dispute that LMHA is a political subdivision.

**{¶ 9}** Whether a political subdivision is protected against tort liability under R.C. Chapter 2744 involves a three-tiered analysis: "First, R.C. 2744.02(A)(1) sets out a general rule that political subdivisions are not liable in damages. In setting out this rule, R.C. 2744.02(A)(1) classifies the functions of political subdivisions into governmental and proprietary functions and states that the general rule of immunity is not absolute, but is limited by the provisions of R.C. 2744.02(B), which details when a political subdivision is not immune. Thus, the relevant point of analysis (the second tier) then becomes whether any of the exceptions in R.C. 2744.02(B) apply. Furthermore, if any of R.C. 2744.02(B)'s exceptions are found to apply, a consideration of the application of R.C. 2744.03 becomes relevant, as the third tier of analysis." [3] *Greene Cty. Agricultural Soc. v. Liming* (2000), 89 Ohio St.3d 551, 556-557, 733 N.E.2d 1141.

**{¶ 10}** The general rule states that "a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." R.C. 2744.02(A)(1). R.C. 2744.01 explains whether a given function is proprietary or governmental.

---

3. Potential defenses under R.C. 2744.03 have not been raised and will not be discussed. The issue is whether LMHA may claim immunity and, if so, whether any statutory exception to immunity applies.

**{¶ 11}** A "proprietary function" is a function that either (1) is specifically listed in R.C. 2744.01(G)(2), which lists examples of proprietary functions, or (2) is not described in R.C. 2744.01(C)(1)(a), (b), or (C)(2) *and* "promotes or preserves the public peace, health, safety, or welfare and * * * involves activities that are customarily engaged in by nongovernmental persons." R.C. 2744.01(G)(1).

**{¶ 12}** By contrast, R.C. 2744.01(C) provides two routes to determine whether a given function is governmental. First, the statute refers to the list in R.C. 2744.01(C)(2) of "specified" functions that the General Assembly has expressly deemed governmental. In the alternative, a function is governmental if it meets one of three independent standards, enumerated in R.C. 2744.01(C)(1)(a) through (c).

**{¶ 13}** LMHA, as a metropolitan housing authority, performs a specified "governmental function" under R.C. 2744.01(C)(2)(q). The statute provides that "[u]rban renewal projects and the elimination of slum conditions" are governmental functions. LMHA performs these functions.

**{¶ 14}** Before creating a metropolitan housing authority, the director of development must determine that either "[u]nsanitary or unsafe inhabited housing accommodations exist" or there is "a shortage of safe and sanitary housing accommodations in that area available to persons who lack the amount of income that is necessary * * * to enable them, without financial assistance, to live in decent, safe, and sanitary dwellings without congestion." R.C. 3735.27(A)(1) and (2).

**{¶ 15}** Once created, a metropolitan housing authority is required to use its power in order to "clear, plan, and rebuild slum areas within the district in which the authority is created, to provide safe and sanitary housing accommodations to families of low income within that district, or to accomplish any combination of the foregoing purposes." R.C. 3735.31.

**{¶ 16}** In order to carry out this mission, a metropolitan housing authority can designate portions of the region as "slum areas" and then provide and maintain housing projects in those areas, in addition to other, attendant powers. R.C. 3735.31(B). The housing project[4] in which Moore resided is operated by LMHA.

**{¶ 17}** This analysis finds further support in R.C. 2744.01(C)(2)(g), which provides that governmental functions include the "repair, renovation, maintenance, and operation of buildings that are used in connection with the performance of a governmental function." Housing projects are designed to eliminate slum conditions, and the repair and maintenance of public housing are attendant powers of the public housing authority, performed to further the elimination of slum conditions.

**{¶ 18}** Finally, we note that LMHA's argument that it performs a governmental function is bolstered by R.C. 2744.01(F). The parties do not dispute that LMHA is a political subdivision under R.C. 2744.01(F), which defines a political subdivision as one "responsible for governmental activities." These governmental activities involve a governmental function.

**{¶ 19}** In view of the foregoing, we hold that the operation of a public housing authority is a governmental function under R.C. 2744.01(C)(2). We

---

4. {¶ a} " 'Housing project' or 'project' means any of the following works or undertakings:

{¶ b} "(1) Demolish, clear, or remove buildings from any slum area. Such work or undertaking may embrace the adaptation of such area to public purposes, including parks or other recreational or community purposes.

{¶ c} "(2) Provide decent, safe, and sanitary urban or rural dwellings, apartments, or other living accommodations for persons of low income. Such work or undertaking may include buildings, land, equipment, facilities, and other real or personal property for necessary, convenient, or desirable appurtenances, streets, sewers, water service, parks, site preparation, gardening, administrative, community, health, recreational, educational, welfare, or other purposes.

{¶ d} "(3) Accomplish a combination of the foregoing. 'Housing project' also may be applied to the planning of the buildings and improvements, the acquisition of property, the demolition of existing structures, the construction, reconstruction, alteration, and repair of the improvements, and all other work in connection therewith." R.C. 3735.40(C).

therefore need not analyze the three independent standards enumerated in R.C. 2744.01(C)(1)(a) through (c).

B. *Exceptions to political subdivision immunity under R.C. 2744.02(B)*

{¶ 20} Having held that LMHA, as a political subdivision, performs a governmental function by providing public housing, we must now consider whether any of the R.C. 2744.02(B) exceptions to political subdivision immunity apply. The trial court found that the only potential exception was R.C. 2744.02(B)(4), while the court of appeals discussed R.C. 2744.02(B)(5).[5] LMHA argues that neither exception removes its immunity.

C. *R.C. 2744.02(B)(5)*

{¶ 21} R.C. 2744.02(B)(5) states that a political subdivision may be liable when a statute expressly imposes liability: "[A] political subdivision is liable for injury, death, or loss to person or property when civil liability is *expressly imposed* upon the political subdivision by a section of the Revised Code, including, but not limited to, sections 2743.02 [hospitals] and 5591.37 [guardrails] of the Revised Code." (Emphasis added.) Moore argues that R.C. Chapter 5321, the Landlords and Tenants Act, is among the statutes that expressly impose liability. But that chapter of the Revised Code imposes civil liability on landlords in general. It does not *expressly* impose liability on the LMHA or any other political subdivision.

D. *R.C. 2744.02(B)(4)*

{¶ 22} R.C. 2744.02(B)(4) states that "[e]xcept as otherwise provided in section 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property that is caused by the negligence of their employees and that occurs within or on the grounds of, and is *due to physical defects within or on the grounds of, buildings* that are used in connection with the

---

5. R.C. 2744.02B(2) would apply only if we were to hold that the operation of a public housing authority is a proprietary function.

performance of a governmental function, *including, but not limited to, office buildings and courthouses* * * *." (Emphasis added.)

{¶ 23} LMHA claims that the legislature intended to apply this exception only to buildings that are similar to "office buildings and courthouses" and that the salient characteristics of office buildings and courthouses are that, unlike public housing, the public frequents them and transacts business in them.

{¶ 24} But the phrase "including, but not limited to" denotes a nonexclusive list of buildings to which the exception may apply. The phrase "buildings that are used in connection with the performance of a governmental function" is the critical phrase. We conclude that a unit of public housing is a building "used in connection with the performance of a governmental function" within the meaning of R.C. 2744.01(C)(2). LMHA is therefore liable for negligence if the deaths in this case were due to physical defects occurring on its property within the meaning of R.C. 2744.02(B)(4).

{¶ 25} The final step in the analysis of (B)(4) is to determine whether absence of a required smoke detector is a "physical defect" occurring on the grounds of LMHA's property. Because the trial court did not fully consider this issue, which, if established, would dissolve immunity, we must remand to the trial court for further proceedings.

### III. Conclusion

{¶ 26} We resolve the certified conflict by holding that the operation of a public housing authority is a governmental function within the meaning of Ohio's sovereign-immunity statutes. We therefore reverse the judgment of the court of appeals and remand this case to the trial court for a determination of negligence and available affirmative defenses.

Judgment reversed

and cause remanded.

MOYER, C.J., and LUNDBERG STRATTON and O'CONNOR, JJ., concur.

PFEIFER, J., concurs in judgment only.

O'DONNELL, J., concurs in part and dissents in part.

CUPP, J., dissents.

_____

**O'DONNELL, J., concurring in part and dissenting in part.**

{¶ 27} I concur in today's holding that the Lorain Metropolitan Housing Authority is a political subdivision with sovereign immunity under R.C. Chapter 2744 and that its operation is a "governmental function" pursuant to R.C. 2744.01(C)(2). I respectfully dissent, however, from the majority's premature conclusion that a public housing unit is a building "used in connection with the performance of a governmental function" for purposes of the exception to immunity provided by R.C. 2744.02(B)(4). In my view, this court should not decide that matter at this time.

{¶ 28} Here, the trial court entered summary judgment in favor of the Lorain Metropolitan Housing Authority and against Danielle Moore, ruling that the provision of low-income housing is a governmental function and that the residential property in this case is not a building "used in connection with the performance of a governmental function" for purposes of the exception to immunity set forth in R.C. 2744.02(B)(4). This statute provides that "political subdivisions are liable for injury, death, or loss to person or property that is caused by negligence of their employees and that occurs within or on the grounds of, and is due to physical defects within or on the grounds of, buildings that are used in connection with the performance of a governmental function."

{¶ 29} Moore appealed to the Ninth District, which reversed the trial court and held, as a threshold matter, that the operation of a metropolitan housing facility is a proprietary rather than governmental function. *Moore v. Lorain Metro. Hous. Auth.*, Lorain App. No. 06CA008995, 2007-Ohio-5111, ¶21. Because R.C. 2744.02(B)(4) applies only with respect to governmental functions,

the court of appeals never considered Moore's arguments concerning this exception to immunity.

{¶ 30} Although I concur with the majority's decision to reverse the court of appeals and to hold that a metropolitan housing authority performs a governmental rather than proprietary function, I am of the view that this case should be remanded to the court of appeals to determine in the first instance whether R.C. 2744.02(B)(4) applies here. Thus, I respectfully dissent from the majority's resolution of this issue and its order remanding the case to the trial court for further proceedings.

_____

**CUPP, J., dissenting.**

{¶ 31} Much of what a metropolitan housing authority does, or is authorized to do, fits easily within the statutory definition of "governmental function" for purposes of political subdivision liability immunity. However, not everything does.

{¶ 32} In my view, the reach of the statutory phrase that the majority opinion relies upon, "[u]rban renewal projects and the elimination of slum conditions," does not extend so far as to encompass the ordinary day-to-day conduct of a metropolitan housing authority acting as a landlord in operating and maintaining residential rental properties. Such activities are indistinguishable from those engaged in by private landlords. Consequently, I would affirm that part of the judgment of the court of appeals that concludes that the operation and maintenance of residential rental properties are proprietary functions within the meaning of R.C. 2744.01(G)(1). On remand, the trial court should consider whether any of the immunities applicable to a political subdivision's proprietary functions apply, with the exception of whether civil liability is expressly imposed by the Landlord Tenant Act of R.C. Chapter 5321. On that issue, I conclude, as

does the majority opinion, that civil liability is not "expressly" imposed, as required by R.C. 2744.02(B)(5).

{¶ 33} The operation and maintenance of residential rental properties are not specifically identified as governmental functions within the R.C. 2744.01(C)(2) listing of such functions. They also do not meet the R.C. 2744.01(C)(2)(q) criteria of "[u]rban renewal projects and the elimination of slum conditions." Urban renewal is described as the process of "acquiring, clearing, and redeveloping slums or blighted areas by the use of the power of the government." Gotherman, Babbit & Lang, 1 Local Government Law (2004) 888, Section 26:15. Although there is no Revised Code definition of "elimination of slum conditions," the terms "blighted area" and "slum" are defined as areas in which the sound growth of the state or a political subdivision of the state is impaired or arrested, the provision of housing accommodations is retarded, economic or social liability is created, or the public health, safety, morals, or welfare is threatened. See R.C. 3735.40(B), adopting the definition set forth in R.C. 1.08.

{¶ 34} Urban renewal projects and similar programs for the purpose of eliminating slum conditions are mentioned or described in various parts of the code, such as R.C. Chapter 163 (appropriation of property by the state government), R.C. Chapter 725 (financing municipal urban renewal projects with revenue bonds), R.C. Chapter 1728 (community urban redevelopment corporations), and R.C. Chapter 5709 (enterprise zones). Condemnation and appropriation are common governmental actions taken in connection with urban renewal. See, e.g., *Kim's Auto & Truck Serv., Inc. v. Toledo*, 172 Ohio App.3d 1, 2007-Ohio-2260, 872 N.E.2d 1245; *Alliance v. Zellweger* (Mar. 12, 2001), Stark App. Nos. 2000CA0093 and 2000CA0094, 2001 WL 256319; *Farra v. Dayton* (1989), 62 Ohio App.3d 487, 576 N.E.2d 807. Moreover, such governmental actions generally do not run afoul of Section 6, Article VIII, Ohio Constitution,

which prohibits a political subdivision from lending its credit. See, e.g., *State ex rel. Tomino v. Brown* (1989), 47 Ohio St.3d 119, 549 N.E.2d 505; *State ex rel. Bruestle v. Rich* (1953), 159 Ohio St. 13, 50 O.O. 6, 110 N.E.2d 778.

**{¶ 35}** None of the foregoing, however, encompasses the ongoing conduct of being a residential landlord. The processes of the actual daily, ongoing operation and maintenance of residential rental property, which may occur following the *completion* of an urban renewal project, do not constitute the undertaking of an urban renewal project or slum elimination. Although ongoing operation and maintenance of residential rental property may take place as a *result* of the decision to engage in an "urban renewal project or the elimination of slum conditions," they do not equate to either.

**{¶ 36}** Similarly, the operation and maintenance of residential rental property are not functions that meet any of the three criteria of R.C. 2744.01(C)(1) so as to be considered a governmental activity. I am persuaded by the concise conclusion reached by the appellate court in *Parker v. Dayton Metro. Hous. Auth.* (May 31, 1996), Montgomery App. No. 15556, 1996 WL 339935, upon which the appellate court in this instant case relied:

**{¶ 37}** "Maintenance of a public housing facility is voluntary but it is not a function that is imposed on the state as an obligation of sovereignty. Its benefits are conferred only on the limited part of the population that uses it. The activity promotes the public peace, health, safety, and welfare; however, it is a function which involves activities that are customarily engaged in by nongovernmental persons, in this instance private landlords who rent residential premises to tenants."

**{¶ 38}** Consequently, I would hold that the operation and maintenance of residential rental property are proprietary functions within the meaning of R.C. 2744.01(G)(1) and that unless one of the immunities applicable to proprietary

12

functions applies, there remains in dispute a genuine issue of material fact regarding the presence of the smoke alarm within the residential unit.

{¶ 39} Finally, even if the majority is correct that a metropolitan housing authority's conduct is a governmental function under its "[u]rban renewal projects and the elimination of slum conditions" authority, I agree with that portion of Justice O'Donnell's dissent that states that it is premature for this court to determine whether the LMHA's individual residential rental properties fall within the "used in connection with the performance of a governmental function" exception to immunity contained in R.C. 2744.02(B)(4).

_____

Joseph F. Salzgeber, for appellee.

Stumphauzer, O'Toole, McLaughlin, McGlamery & Loughman Co., L.P.A., Dennis M. O'Toole, and Daniel D. Mason; and Rawlin Gravens Co., L.P.A., and Terrance P. Gravens, for appellant.

Willacy, LoPresti & Marcovy and Aubrey B. Willacy, urging reversal for amicus curiae, Cuyahoga Metropolitan Housing Authority.

_____