[Cite as *Lascu v. Apex Paper Box Co.*, 2011-Ohio-4407.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 95091**

## SHARON LASCU

PLAINTIFF-APPELLANT

vs.

## APEX PAPER BOX CO., ET AL.

DEFENDANTS-APPELLEES

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-694606

**BEFORE:** Cooney, J., Stewart, P.J., and Jones, J.

**RELEASED AND JOURNALIZED:** September 1, 2011

**ATTORNEYS FOR APPELLANT**

Greer A. Hopkins
Lewis A. Zipkin
Zipkin Whiting Co., L.P.A.
Zipkin Whiting Building
3637 South Green Road
Beachwood, Ohio 44122


**ATTORNEYS FOR APPELLEES**

Tracey L. Turnbull
Porter Wright Morris & Arthur LLP
1700 Huntington Building
925 Euclid Avenue
Cleveland, Ohio 44115-1483

Fred G. Pressley, Jr.
Porter Wright Morris & Arthur LLP
41 South High Street
Suites 2800-3200
Columbus, Ohio 43215


COLLEEN CONWAY COONEY, J.:

{¶ 1} Plaintiff-appellant, Sharon Lascu ("Lascu"), appeals the trial court's granting summary judgment in favor of defendants-appellees, Apex Paper Box Company, Mark Casesse, Tom Trucks, and Terry Piar (collectively "Apex"). Finding no merit to the appeal, we affirm.

{¶ 2} Lascu had been employed by Apex from 1979 until her termination in 2009. In June 2009, Lascu filed suit against Apex alleging gender discrimination, age discrimination,

retaliation, and wrongful discharge, and negligent retention and supervision. Lascu subsequently dismissed one of the codefendants, as well as her claim for retaliation and wrongful discharge. In February 2010, Apex filed a motion for summary judgment, arguing that Lascu had been terminated as part of a reduction in force. The trial court granted the motion in its entirety.

{¶ 3} Lascu now appeals, raising two assignments of error.[1]

{¶ 4} Appellate review of summary judgment is de novo. *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241. The Ohio Supreme Court stated the appropriate test in *Zivich v. Mentor Soccer Club* (1998), 82 Ohio St.3d 367, 369-370, 696 N.E.2d 201, as follows:

> "Pursuant to Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. *Horton v. Harwick Chem. Corp.* (1995), 73 Ohio St.3d 679, 653 N.E.2d 1196, paragraph three of the syllabus. The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264, 273-274."

{¶ 5} Once the moving party satisfies its burden, the nonmoving party "may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by

---

[1] Lascu raises no argument on appeal regarding her age discrimination claim. Therefore, we consider it abandoned for purposes of appeal.

affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E); *Mootispaw v. Eckstein* (1996), 76 Ohio St.3d 383, 385, 667 N.E.2d 1197. Doubts must be resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 358-359, 604 N.E.2d 138.

## Gender Discrimination

{¶ 6} In her first assignment of error, Lascu argues that the trial court abused its discretion and committed reversible error when it failed to find that genuine issues of material fact exist showing Apex discriminated against her on the basis of her gender.

{¶ 7} In order to prevail in an employment discrimination case, Lascu must directly or indirectly prove discriminatory intent. *Mauzy v. Kelly Servs., Inc.* (1996), 75 Ohio St.3d 578, 587-588, 664 N.E.2d 1272; *Byrnes v. LCI Communication Holdings Co.* (1996), 77 Ohio St.3d 125, 128-129, 672 N.E.2d 145. Lascu argues that she can prove her case indirectly, which permits her to establish discriminatory intent through the analysis set forth in *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668. To establish a prima facie case of gender discrimination, Lascu must show that (1) she is a member of a protected class, (2) she suffered an adverse employment action, (3) she was qualified for the position, and (4) the position was filled by a person outside the protected

class. *McDonnell Douglas* at 802; see, also, *Brewer v. Cleveland Bd. of Edn.* (1997), 122 Ohio App.3d 378, 701 N.E.2d 1023.

{¶ 8} However, in situations like the instant case where the defendant claims a reduction in work force, the plaintiff is not required to prove the fourth prong of the prima facie framework because in a reduction-of-force situation, the plaintiff is not replaced. *Godfredson v. Hess & Clark, Inc.* (C.A.6, 1999), 173 F.3d 365. Instead, Lascu may establish the fourth prong of the *McDonnell Douglas* test by showing that she was treated less favorably than a similarly situated employee outside her protected class. *Clayton v. Meijer, Inc.* (C.A.6, 2002), 281 F.3d 605, 610. In such a case, Lascu must prove that all relevant aspects of her employment situation were similar to those of the employee with whom she seeks to compare herself. *Kroh v. Continental Gen. Tire, Inc.* (2001), 92 Ohio St.3d 30, 32, 748 N.E.2d 36, citing *Ercegovich v. Goodyear Tire & Rubber Co.* (C.A.6, 1998), 154 F.3d 344, 352.

{¶ 9} Moreover, in a reduction of force situation, the plaintiff must present *additional* direct, circumstantial, or statistical evidence tending to show that the employer singled out the plaintiff for discharge for impermissible reasons. *Barnes v. GenCorp, Inc.* (C.A.6, 1990), 896 F.2d 1457, 1465. The establishment of a prima facie case of discrimination under *McDonnell Douglas* creates a presumption that the employer unlawfully discriminated against

the employee. *Texas Dept. of Community Affairs v. Burdine* (1981), 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207.

{¶ 10} Once a prima facie case of discrimination is established, Apex may overcome the presumption by coming forward with a legitimate, nondiscriminatory reason for the discharge. *Kohmescher v. Kroger Co.* (1991), 61 Ohio St.3d 501, 575 N.E.2d 439. Lascu must then present evidence that Apex's proffered reason was a mere pretext for unlawful discrimination. *Manofsky v. Goodyear Tire & Rubber Co.* (1990), 69 Ohio App.3d 663, 668, 591 N.E.2d 752. Lascu's burden is to prove that Apex's reason was false and that discrimination was the real reason for the discharge. *Wagner v. Allied Steel & Tractor Co.* (1995), 105 Ohio App.3d 611, 617, 664 N.E.2d 987. To satisfy her burden, Lascu must produce some evidence that Apex's proffered reasons were factually untrue. *Powers v. Pinkerton, Inc.* (Jan. 18, 2001), Cuyahoga App. No. 76333.

{¶ 11} In the instant case, it is undisputed that plaintiff is a member of the statutorily protected class for gender discrimination claims and that she was qualified for her position.

Adverse Action

{¶ 12} In terms of the adverse action Lascu suffered, it is undisputed that she was terminated in 2009. However, Lascu also argues that she suffered from adverse action prior to her termination due to years of disparate treatment from her employer. Lascu argues that

she was denied opportunities to train on certain machinery. She claims that had she been trained on this machinery she would not have been terminated.

{¶ 13} However, Lascu's own deposition testimony describes the ways in which she was promoted numerous times during the course of her 30 years of employment with Apex. Lascu testified that she began working on the gluer machine and was subsequently moved to the Meihle machine, then the windmill press, and eventually the liner and coater machines, as both a feeder and an operator. Lascu admitted that when she asked her supervisor to be trained on these machines he agreed, trained her, and she received a promotion. Each promotion came with higher pay. Lascu also testified that anyone could be trained on a different machine and receive a promotion if there was an opening and the person was qualified. Between 1979 and 2000, Lascu testified that she received training and a promotion each time she asked except for one instance in 1998 when she was denied training on the cutter machine. Lascu stated that she was unaware of the reasoning behind this denial. Lascu did not request any training or promotion between 2000 and 2008.

{¶ 14} In 2008, Lascu requested that she be re-trained on the hot stamping machine. Lascu's supervisor stated that her request was denied because at the time there were plenty of current employees already trained on that machine and no official opening. Apex contends that all training occurs on an "as needed" basis; Lascu conceded this point in her deposition.

Even if Lascu had been trained on the hot stamper it would not have constituted a promotion because the pay rate was the same for the stamping machine as it was for the liner and coater machines on which she was working at that time.

{¶ 15} In addition, Lascu claims she asked her supervisor directly if she could be trained on the Zerands machines in late 2008 or early 2009. The Zerands machine is the most highly skilled and highest paying position in the factory. Lascu had already been trained to catch on this machine and wanted to be trained as an operator as well. This request came only months prior to the reduction in force. Lascu's supervisor denied ever being approached by Lascu regarding being trained as an operator on the Zerands machine. Lascu does not offer any evidence of her qualifications to become a Zerands machine operator. One of her supervisors testified that Lascu often struggled with some of the low-level support positions to which she was assigned. Moreover, Lascu assumes that had she been trained on the Zerands, she would have been saved from termination. Apex contends that this is untrue due to three Zerands crew members being terminated as part of the reduction in force.

{¶ 16} In addition, during Lascu's 30 years at Apex, she never filed a complaint with human resources regarding any type of alleged discrimination or disparate treatment.

{¶ 17} Based on the aforementioned evidence, Lascu has failed to satisfy the adverse action element of her prima facie case in terms of disparate treatment during her tenure at

Apex. However, it is undisputed that Lascu was terminated, and on the basis of adverse action, we shall proceed to an analysis of the fourth element of Lascu's prima facie case.

Disparate Treatment

{¶ 18} In terms of satisfying the fourth element of her prima facie case, Lascu's argument is two-fold. She first contends that she was "replaced" by men she trained prior to her termination. We disagree.

> "An employee is not eliminated as part of a work force reduction when he or she is replaced after his or her discharge. However, a person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work. A person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties."

*Barnes* at 1465. See, also, *Langlois v. W.P. Hickman Sys., Inc.*, Cuyahoga App. No. 86930, 2006-Ohio-3737, citing *Atkinson v. Internatl. Technegroup, Inc.* (1995), 106 Ohio App.3d 349, 359, 666 N.E.2d 257.

{¶ 19} In the instant case, the evidence shows that Lascu was not "replaced," as defined in *Barnes*, after her termination. Apex did not hire a replacement for Lascu. Other employees who were trained on the same machines on which Lascu worked continued to perform their duties on a limited basis, in accordance with demand.

{¶ 20} Second, Lascu attempts to satisfy the fourth prong by showing that she was treated less favorably than similarly situated employees outside her protected class. In order

to determine whether an employee is similarly situated to another, we must consider the "relevant aspects" of their job positions and duties. *Kroh*, citing *Ercegovich*.

> "In order for two or more employees to be considered similarly situated for the purpose of creating an inference of disparate treatment, the plaintiff must prove that all of the relevant aspects of his employment situation are 'nearly identical' to those of the [female] employees who he alleges were treated more favorably. The similarity between the compared employees must exist in all relevant aspects of their respective employment circumstances."

*Ruth v. Children's Med. Ctr.* (C.A.6, 1991), 940 F.2d 662 (Table), at 7, quoting *Payne v. Illinois Cent. Gulf R.R.* (W.D. Tenn.1987), 665 F.Supp. 1308, 1333; see, also, *Mitchell v. Toledo Hosp.* (C.A.6, 1992), 964 F.2d 577, 583 (holding that, in order to be deemed "similarly-situated," the plaintiff must show that the comparables "are similarly-situated in all respects") (citing *Stotts v. Memphis Fire Dept.* (C.A.6, 1988), 858 F.2d 289.

{¶ 21} Lascu points to three male employees, Wofford, Wilson, and Moore, to illustrate the ways in which she was treated less favorably. Lascu argues that these three men had less seniority than she, and yet were retained despite the reduction in force. However, at the time of the reduction in force, Wilson had already received training to be a Zerands machine operator, whereas Lascu was only trained to catch. Wofford and Moore both held positions less difficult than those Lascu performed. Lascu failed to offer any evidence as to the amount these three men were being paid at the time of the reduction. Lascu also failed to offer any evidence as to the performance level of these three men.

**{¶ 22}** Lascu also claims that these three male employees were offered different positions prior to the reduction in force in order to avoid termination. Wofford testified that in order to avoid termination, he was offered a position cleaning offices. He accepted this position and testified that he is still cleaning offices nearly a year later. Lascu was also offered a different position in order to avoid termination, a night shift position that she refused. Lascu claims that this offer was only temporary and would not have saved her from termination.

**{¶ 23}** In light of the aforementioned evidence, we find that Lascu failed to meet her burden to demonstrate that she was similarly situated in all relevant respects to Wilson, Wofford, and Moore. Thus, Lascu has failed to satisfy the fourth prong of the *McDonnell Douglas* test and, in turn, has failed to establish her prima facie case for gender discrimination.

<u>Reduction in Force</u>

**{¶ 24}** However, assuming arguendo that questions of fact exist as to whether Lascu can establish a prima facie case for gender discrimination, summary judgment would be proper if Apex can demonstrate that it had a legitimate, nondiscriminatory reason for terminating Lascu.

**{¶ 25}** Apex claims that its legitimate, nondiscriminatory reason was a reduction in force necessitated by the economic climate at the time. Ohio courts have recognized that a

reduction in force due to economic necessity can be a legitimate, nondiscriminatory reason for an employee's discharge. See, e.g., *Langlois v. W.P. Hickman Sys., Inc.*, Cuyahoga App. No. 86930, 2006-Ohio-3737. The record shows that in 2008, Apex lost $800,000 and sales decreased by 9.3%. The 2009 projections were much worse. The company made the choice to reduce its pool of employees in order to survive the difficult economic period.

{¶ 26} In January 2009, Apex eliminated 28 positions (6 female, 22 male). In 2009, Apex lost $1.5 million in the first quarter, with total sales decreased by 42.7%. Despite Apex's hope that one round of eliminations would suffice, the company was forced to eliminate an additional 12 positions (4 females, 8 males) in February 2009. It was during the second round of eliminations that Lascu was terminated. Lascu herself conceded in her brief that Apex was in "a dire financial condition" at the time of the reduction.

{¶ 27} Having articulated a valid, nondiscriminatory rationale for her termination, Lascu's burden is then to prove that the employer's reason was false and that discrimination was the real reason for the discharge. *Wagner v. Allied Steel & Tractor Co.* (1995), 105 Ohio App.3d 611, 617, 664 N.E.2d 987. To establish pretext, a plaintiff must demonstrate "that the proffered reason (1) has no basis in fact; (2) did not actually motivate the employer's challenged conduct; or (3) was insufficient to warrant the challenged conduct." *Dews v. A.B. Dick Co.* (C.A.6, 2000), 231 F.3d 1016, 1021. Regardless of which option is chosen, the

plaintiff must produce sufficient evidence from which the jury could reasonably reject the employer's explanation and infer that the employer intentionally discriminated against him. *Johnson v. Kroger Co.* (C.A.6, 2003), 319 F.3d 858, 866. "[A] reason cannot be proved to be a 'pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515, 113 S.Ct. 2742, 125 L.Ed.2d 407. Mere conjecture that the employer's stated reason is a pretext for intentional discrimination is an insufficient basis for the denial of a summary judgment motion made by the employer. *Powers v. Pinkerton, Inc.* (Jan. 18, 2001), Cuyahoga App. No. 76333.

{¶ 28} The record is devoid of any credible evidence that Apex's decision to eliminate Lascu's position was merely pretextual. See *Boggs v. Scotts Co.*, Franklin App. No. 04AP-425, 2005-Ohio-1264 (summary judgment for employer when the evidence showed that the employee's termination was motivated by the legitimate business purpose of reducing its workforce for financial reasons).

{¶ 29} In her attempt to establish pretext, Lascu argues that Apex's reason for her termination lacks a factual basis. Lascu argues that middle managers without first-hand knowledge of her skill set and performance abilities made the choice to terminate her.

Moreover, Lascu argues that Apex did not have a written policy in place for a reduction in force such as this one. Lascu characterizes her termination as arbitrary.

{¶ 30} However, Lascu offers no direct evidence to prove that Apex's choice to fire her specifically was based on her gender, despite the well documented need for a reduction in force due to the economy. "Intentional discrimination cannot be proven by conclusory allegations made by the charging party." *Minter v. Cuyahoga Community College* (Feb. 17, 2000), Cuyahoga App. No. 76707, citing *Hollowell v. Society Bank & Trust* (1992), 78 Ohio App.3d 574, 580-581, 605 N.E.2d 954.

{¶ 31} In the instant case, we conclude that there is an inadequate evidentiary basis from which a reasonable trier of fact could find or infer that Apex's reasons for terminating Lascu were pretextual.

{¶ 32} We find that Lascu was not discriminated against based on her gender. A thorough review of the record illustrates that there are no genuine issues of material fact. Therefore, the trial court did not err in granting Apex's motion for summary judgment on Lascu's gender discrimination claims.

{¶ 33} With regard to defendants Mark Casesse, Tom Trucks, and Terry Piar, we agree with Lascu's assertion that the law allows a supervisor to be held individually liable for discrimination. The Ohio Supreme Court has held that "[f]or purposes of R.C. Chapter 4112,

a supervisor/manager may be held jointly and/or severally liable with her/his employer for discriminatory conduct of the supervisor/manager in violation of R.C. Chapter 4112." *State ex rel. Conroy v. Williams*, 185 Ohio App.3d 69, 2009-Ohio-6040, 923 N.E.2d 191, at ¶27, citing *Genaro v. Cent. Transport, Inc.* (1999), 84 Ohio St.3d 293, 703 N.E.2d 782, syllabus. However, having failed to establish her prima facie case for discrimination against Apex, Lascu's supervisors cannot be held liable for disparate treatment that is unsubstantiated by the record. For this reason, the trial court properly granted all defendants summary judgment as to Lascu's claim of gender discrimination.

{¶ 34} Accordingly, Lascu's first assignment of error is overruled.

Negligent Retention and Supervision

{¶ 35} In her second assignment of error, Lascu argues that the court abused its discretion in not finding that genuine issues of material fact exist whether Apex negligently retained and supervised defendants Mark Casesse, Tom Trucks, and Terry Piar.

{¶ 36} In order to establish a case of negligent retention, Lascu must satisfy the following elements:

"1) an employment relationship; 2) incompetence of the employee; 3) actual or constructive knowledge of the incompetence by the employer; 4) an act or omission by the employee which caused the plaintiff's injuries; and 5) negligent retention of the employee by the employer, which action is the proximate cause of the plaintiff's injuries."

*Mills v. Deehr*, Cuyahoga App. No 82799, 2004-Ohio-2338, citing *Steppe v. Kmart* (1999), 136 Ohio App.3d 454, 465, 737 N.E.2d 58.

{¶ **37**} In the instant case, Lascu asserts that her supervisors discriminated against her. However, she admits that she never filed any official complaints regarding her treatment. Without a written complaint, Apex would not have actual knowledge of any discriminatory treatment.

{¶ **38**} Moreover, having already found that Lascu failed to prove disparate treatment as discussed above, she has failed to provide evidence of her supervisors' incompetence. Failing to train Lascu as an operator on the Zerands machine does not constitute incompetence when Lascu did not request to be trained as an operator until just a few months prior to the reduction in force.

Accordingly, Lascu's second assignment of error is overruled.

Judgment affirmed.

It is ordered that appellees recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
COLLEEN CONWAY COONEY, JUDGE

MELODY J. STEWART, P.J., and
LARRY A. JONES, J., CONCUR