[Cite as *Wingfiled v. Cleveland*, 2014-Ohio-2772.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 100589**

## DEMETRIUS WINGFIELD

PLAINTIFF-APPELLANT

vs.

## CITY OF CLEVELAND, ET AL.

DEFENDANTS-APPELLEES

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-12-793246

**BEFORE:** Keough, J., Jones, P.J., and McCormack, J.

**RELEASED AND JOURNALIZED:** June 26, 2014

**ATTORNEY FOR APPELLANT**

Tyrone E. Reed
11811 Shaker Blvd., Suite 420
Cleveland, Ohio 44120

**ATTORNEYS FOR APPELLEES**

Barbara Langhenry
Law Director
Alejandro V. Cortes
William M. Menzalora
City of Cleveland Law Department
Cleveland City Hall
601 Lakeside Avenue, Room 106
Cleveland, Ohio 44114

KATHLEEN ANN KEOUGH, J.:

**{¶1}** Plaintiff-appellant Demetrius Wingfield appeals from the trial court's judgment granting the motion for summary judgment of defendants-appellees the city of Cleveland, the Cleveland police department, and police officers Abraham Cortes and Jerrold Zarlenga. Finding no merit to the appeal, we affirm.

## I. Background

**{¶2}** In October 2012, Wingfield filed suit against the city of Cleveland, the Cleveland police department, and two John Doe defendants, alleging negligence and intentional infliction of emotional distress against all defendants. Wingfield subsequently filed an amended complaint identifying police officers Cortes and Zarlenga as the John Doe defendants.

**{¶3}** Wingfield's amended complaint alleged that while he was exiting a restaurant on West 6th Street in Cleveland on July 31, 2011, "one or more mounted horse traffic police officers came upon the sidewalk upon their horses and negligently knocked him down and trampled him under the foot of the horses." The complaint further alleged that the city was liable for the police officers' actions, and that the city and police department had failed to properly train, supervise, and monitor the officers and the horses. In addition, the complaint alleged that the officers' actions were committed maliciously, intentionally, recklessly, and with a conscious disregard for Wingfield's health, safety, and well-being, and caused severe emotional and psychological distress.

**{¶4}** The trial court subsequently granted the appellees' motion for summary judgment, finding that the Cleveland police department is not sui juris and thus cannot be

sued, and that the remaining defendants were immune from liability under R.C. Chapter 2744, Ohio's Political Subdivision Tort Liability Act.

**{¶5}** This appeal followed.

## II. Analysis

**{¶6}** In his first assignment of error, Wingfield asserts that the trial court erred in granting summary judgment to appellees because the allegations of his complaint fall within the exception to immunity set forth in R.C. 2744.02(B)(1). In his second assignment of error, Wingfield contends that the trial court erred in granting summary judgment because there is a question of fact regarding the officers' negligence. We consider these assigned errors together because they are related.

**{¶7}** Appellate review of summary judgment is de novo, governed by the standard set forth in Civ.R. 56. *Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, ¶ 8. Accordingly, we afford no deference to the trial court's decision and independently review the record to determine whether summary judgment is appropriate. *Hollins v. Shaffer*, 182 Ohio App.3d 282, 2009-Ohio-2136, 912 N.E.2d 637, ¶ 12 (8th Dist.). Under Civ.R. 56(C), summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) after construing the evidence most favorably for the party against whom the motion is made, reasonable minds can reach only a conclusion that is adverse to the nonmoving party. *Zivich v. Mentor Soccer Club, Inc.*, 82 Ohio St.3d 367, 369-370, 696 N.E.2d 201 (1998); *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977).

**{¶8}** Initially, we note that Wingfield does not challenge the trial court's judgment granting summary judgment to the Cleveland police department because it is not a legal entity capable of being sued. *See Richardson v. Grady*, 8th Dist. Cuyahoga Nos. 77381 and 77403, 2000 Ohio App. LEXIS 5960 (Dec. 18, 2000). Accordingly, Wingfield has abandoned any claim against the police department. *See, e.g., Lascu v. Apex Paper Co.*, 8th Dist. Cuyahoga No. 95091, 2011-Ohio-4407, ¶ 3.

**{¶9}** Wingfield asserted claims for negligence and intentional infliction of emotional distress against the city.[1] It is well established that under R.C. 2744.02, political subdivisions are immune from intentional torts. *Walsh v. Mayfield*, 8th Dist. Cuyahoga No. 92309, 2009-Ohio-2377, ¶ 11, citing *Wilson v. Stark Cty. Dept. of Human Servs.*, 70 Ohio St.3d 450, 639 N.E.2d 105 (1994). Because the city is a political subdivision under R.C. 2744.01(F), it is immune from Wingfield's claim of intentional infliction of emotional distress. Thus, we analyze whether the trial court properly granted summary judgment to the city on Wingfield's negligence claim.

**{¶10}** Determining whether a governmental entity is immune from tort liability involves a three-step analysis. *Elston v. Howland Local Schools*, 113 Ohio St.3d 314,

---

[1] As part of the negligence claim, Wingfield's complaint included an allegation that the city negligently failed to properly train, supervise, and monitor the officers. The city treats this allegation as a separate "failure to train" cause of action. But in *DiGiorgio v. Cleveland*, 8th Dist. Cuyahoga No. 95945, 2011-Ohio-5878, ¶ 31, this court explained that failure to train is not an independent cause of action to which the three-step immunity analysis applies. Although a municipality's failure to train or supervise its police officers could, in the proper case, be evidence that the municipality acted in a reckless or wanton manner, thereby depriving the municipality of a defense to an exception to immunity, such evidence does not create an independent cause of action regarding the training or supervision of police officers. *Id.*, citing *Cater v. Cleveland*, 83 Ohio St.3d 24, 697 N.E.2d 610 (1998).

2007-Ohio-2070, 865 N.E.2d 845, ¶ 10.  First, R.C. 2744.02(A)(1) sets forth the general blanket immunity applicable to political subdivisions.  It provides that a political subdivision is generally not liable in a civil action for injury, death, or loss to person or property incurred while performing governmental or proprietary functions.

{¶11}  To overcome this statutory immunity, a plaintiff must show that one of the five exceptions contained in R.C. 2744.02(B) applies.   These exceptions are (1) negligent operation of a motor vehicle; (2) negligent conduct of employees while carrying out a proprietary function; (3) a municipality's failure to keep roads and sidewalks free from nuisance; (4) injury or loss that occurs on or within buildings used for governmental functions and is caused by the negligence of the municipality's employees; and (5) any other situation in which liability is expressly imposed by the Revised Code.

{¶12} If a plaintiff demonstrates that one of the five enumerated exceptions to governmental immunity applies, a political subdivision may then assert one of the defenses set forth in R.C. 2744.03(A) to revive its immunity.

{¶13} This court has recognized that the provision of police services and the training of police are governmental functions subject to statutory immunity. *Hall-Pearson v. S. Euclid*,  8th Dist. Cuyahoga No. 73429, 1998 Ohio App. LEXIS 4796 (Oct. 8, 1998); *McCloud v. Nimmer*, 72 Ohio App.3d 533, 538, 595 N.E.2d 492 (8th Dist. 1991).  Thus, under the three-step analysis set forth above, we must determine whether any of the exceptions to immunity apply to Wingfield's negligence claim.

{¶14} Wingfield contends that the city is not immune from liability because the exception to immunity set forth in R.C. 2744.02(B)(1) — the negligent operation of a

motor vehicle — applies. R.C. 2744.02(B)(1) states that "political subdivisions are liable for injury, death, or loss to person or property caused by the negligent operation of any motor vehicle by their employees when the employees are engaged within the scope of their employment and authority." Wingfield contends that the exception applies to this case because the "driving of a horse is the equivalent of operating a motor vehicle."

{¶15} To determine whether the "operation of a motor vehicle," as used in R.C. 2744.02(B)(1), includes riding a horse, we are guided by the principles of statutory construction. When construing a statute, courts look at the specific language contained in the statute and when its meaning is unambiguous and definite, apply the statute as written. *Provident Bank v. Wood*, 36 Ohio St.2d 101, 105-106, 304 N.E.2d 378 (1973). Words and phrases shall be read in context and construed according to the rules of grammar and common usage. *State v. Manocchio*, 138 Ohio St.3d 292, 2014-Ohio-785, 6 N.E.23d 47, ¶ 17. "'Words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly.'" *Id.*, quoting R.C. 1.42.

{¶16} Here, the legislature defined "motor vehicle" for purposes of the Political Subdivision Tort Liability Act. Under R.C. 2744.01(E), the term "motor vehicle" as used in the Act has the same definition as in R.C. 4511.01, which defines "motor vehicle" as "every vehicle propelled or drawn by power *other than muscular power* or power collected from overhead electric trolley wires * * *." (Emphasis added.) In short, a motor vehicle is some sort of mechanized vehicle. A horse, which is obviously powered by its muscles, is therefore not included in the definition of "motor vehicle." Although Wingfield argues

that there is no reason to treat the "driving of a horse" differently from the "operation of a motor vehicle," the statutory definition of "motor vehicle" makes it clear that riding a horse is not equivalent to operating a motor vehicle. Accordingly, the exception to immunity for the negligent operation of a motor vehicle does not apply to this case.

{¶17} Because none of the exceptions to immunity set forth in R.C. 2744.02(B) apply to the facts of this case, the trial court properly granted summary judgment to the city. Wingfield's argument that the trial court erred in granting summary judgment because there is a question of fact regarding whether the officers were negligent is not relevant to the determinative issue, which is whether the city is entitled to immunity. Even assuming the police officers were negligent, Wingfield's claims against the city are barred because no exception to immunity applies.

{¶18} We next consider the trial court's grant of summary judgment to officers Cortes and Zarlenga. Wingfield contends that the officers are not immune from liability because of the exception for operation of a motor vehicle found in R.C. 2744.02(B)(1). But the immunity analysis for employees of political subdivisions is governed by R.C. 2744.03(A)(6), not the three-tier analysis set forth in R.C. 2744.02. *Cramer v. Auglaize Acres*, 113 Ohio St.3d 266, 2007-Ohio-1946, 865 N.E.2d 9. Under R.C. 2744.03(A)(6), an employee is immune from liability unless the employee's acts "were manifestly outside the scope of the employee's employment or official responsibilities," or "were with malicious purpose, in bad faith, or [done] in a wanton or reckless manner," or liability is expressly imposed upon the employee by a section of the Revised Code. Wingfield does not allege that Cortes and Zarlenga's actions were outside the course and scope of their

employment, and there is no section of the Revised Code that imposes liability for their actions. Accordingly, the issue is whether their actions were with malicious purpose, in bad faith, or wanton and reckless.

{¶19} In *Anderson v. Massillon*, 134 Ohio St.3d 380, 2012-Ohio-5711, 983 N.E.2d 266, the Ohio Supreme Court defined wanton misconduct and reckless conduct for purposes of the sovereign immunity statutes. "Wanton misconduct is the failure to exercise any care toward those to whom a duty of care is owed in circumstances in which there is great probability that harm will result." *Id.* at ¶ 33. "Reckless conduct is characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct." *Id.* at ¶ 34.

{¶20} "Malicious purpose encompasses exercising 'malice,' which can be defined as the willful and intentional design to do injury, or the intention or desire to harm another, usually seriously, through conduct that is unlawful or unjustified." *Caruso v. State*, 136 Ohio App.3d 616, 620-621, 737 N.E.2d 563 (10th Dist.), citing *Jackson v. Butler Cty. Bd. of Commrs.*, 76 Ohio App.3d 448, 453-454, 602 N.E.2d 363 (12th Dist.). "'Bad faith' connotes a dishonest purpose, conscious wrongdoing, intent to mislead or deceive, or the breach of a known duty through some ulterior motive or ill will." *Strickland v. Tower City Mgt. Corp.*, 8th Dist. Cuyahoga No. 71839, 1997 Ohio App. LEXIS 5802, at *3 (Dec. 24, 1997).

{¶21} Applying these definitions to the facts of this case, we find no evidence that Cortes's and Zarlenga's actions were malicious, wanton, reckless, or in bad faith.

**{¶22}** In their motion for summary judgment, Cortes and Zarlenga, relying on their affidavits and the affidavits of patrol officer Cindy Pivarnik and Sergeant George Peters, as well as the depositions of appellant Wingfield, his brother Derek, and Sergeant Peters, presented the following facts relating to the alleged incident.

**{¶23}** On the evening of July 30, 2011, Wingfield and six or seven other individuals went to a bar on West 6th Street in Cleveland. At approximately 2:30 a.m., after a fight broke out in the bar, bar security and the police shut down the bar and had everyone exit the bar. The fighting continued on the sidewalk outside the bar, however, and soon escalated into a brawl.

**{¶24}** Peters, incident commander of the West 6th Street detail, and Cortes, a police officer in the mounted police unit, were posted near the bar when the brawl broke out. Zarlenga, then officer-in-charge of the mounted police unit, was posted approximately 100 yards away from the bar.

**{¶25}** Peters made his way toward the fight in order to break it up and clear the crowd. As he approached the crowd, he was knocked to the ground near the curb by two unidentified individuals who were running from the crowd. Cortes, who was near the curb, saw Peters get knocked to the ground and believed that Peters may have hit his head on the pavement. Concerned for Peters's safety, Cortes rode his horse over to Peters in order to protect him from the crowd.

**{¶26}** While he was on the ground, Peters saw a male, later identified as Wingfield, get sucker punched on the side of his head and knocked to the ground near the legs of Cortes's horse. At no time did Peters see Cortes's horse kick or stomp Wingfield while

he was on the ground.

{¶27} Peters got up and appeared to be okay, so Cortes turned toward the street. His horse momentarily lost its balance as it stepped off the curb. When the horse regained its balance, Cortes turned toward the crowd and saw Wingfield, who appeared to be unconscious, lying on the ground. Cortes blew his whistle to alert Zarlenga that he needed help, and Zarlenga began riding his horse toward the area.

{¶28} Peters went over to Wingfield, and when Wingfield came to, Peters asked him if he was injured and needed medical assistance. Wingfield said he did not need assistance and asked Peters what had happened. As Peters tried to assist him, Wingfield's brother Derek and an unknown female came over to Wingfield, and Derek said "that's my brother," and dragged him away. Fearing that Wingfield needed medical attention, Peters tried to stop them from leaving, but they left the scene. By the time Zarlenga reached the area, the crowd had dispersed.

{¶29} A few minutes later, Peters saw Wingfield, Derek, and the unknown female walking back to the area. They were yelling and, according to Peters, it looked like they wanted to fight with some people, including the individual who had sucker punched Wingfield. Peters told them to leave, and they left the area.

{¶30} Patrol officer Cindy Pivarnik, who was assigned to the West 6th area on July 31, 2011, and was across the street from the bar, saw the fight and subsequently observed two males, later identified as Wingfield and his brother Derek, walking down West 6th Street and yelling, "This is bullshit! The police don't care, but we'll handle it! Somebody's gonna get f***** up!" Pivarnik and her partner followed Wingfield and

Derek from a distance until they saw them arrive at a parking lot and drive away.

{¶31} On August 3, 2011, Wingfield filed an injury-to-person report regarding the alleged incident on July 31, 2011. Zarlenga was ordered to investigate the allegations. He obtained statements from Cortes, Peters, and Pivarnik and unsuccessfully attempted to obtain surveillance video of the incident. Zarlenga contacted Wingfield at the telephone number Wingfield had provided on the injury report but Wingfield never responded to Zarlenga's telephone message. As a result of the information he obtained from the officers and Wingfield's lack of response, Zarlenga closed the investigation.

{¶32} Construing this evidence in a light most favorable to Wingfield, which we are required to do, we find nothing to suggest that Cortes's and Zarlenga's actions were malicious, wanton, reckless, or in bad faith. The evidence merely established the following regarding the police officers' actions: a large fight broke out at approximately 2:30 a.m. in front of a bar on West 6th Street in Cleveland. When Peters arrived on the scene to help break up the fight, he was knocked to the ground by two unidentified males. Cortes saw Peters get knocked to the ground and, concerned for his safety, rode his horse over to Peters to make sure he was okay. After verifying that Peters was not hurt, Cortes returned to his police duties. Zarlenga did not appear on the scene until the crowd had disbursed.

{¶33} In his brief in opposition to the motion for summary judgment, Wingfield asserted there was a question of fact requiring denial of the summary judgment motion because both he and Derek testified in deposition that he was "trampled" and kicked in the head by police horses during the fight. Even accepting this version of the alleged incident

as true, Wingfield presented no evidence whatsoever that Cortes and Zarlenga intentionally tried to injure him; that Cortes knew, or should have known, that riding over to Peters would create an unnecessary risk of harm to Wingfield; or that Cortes and Zarlenga acted in bad faith. Because there was no evidence their actions were malicious, wanton, reckless, or in bad faith, Cortes and Zarlenga are subject to immunity under R.C. 2744.03(A)(6), and therefore, the trial court properly granted summary judgment on Wingfield's claims against them.

{¶34} Finally, we reject Wingfield's argument that the trial court's judgment granting summary judgment denied him "equal protection of the exception carved out in R.C. 2744.02(B)(1), as there is no rational basis to allow liability in the case of a car being driven and to deny it in the case of a horse being ridden, when both are capable of causing severe injury or death." It is well established that a party cannot raise a constitutional issue for the first time on appeal. *See State v. Awan*, 22 Ohio St.3d 120, 489 N.E.2d 277 (1986), syllabus ("Failure to raise at the trial court level the issue of the constitutionality of a statute or its application, which issue is apparent at the time of trial, constitutes a waiver of such issue and a deviation from this state's orderly procedure, and therefore need not be heard for the first time on appeal.") Wingfield did not raise the equal protection issue in the trial court and, accordingly, has waived it for purposes of appeal.

{¶35} The first and second assignments of error are overruled.

{¶36} Judgment affirmed.

It is ordered that appellees recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


KATHLEEN ANN KEOUGH, JUDGE

LARRY A. JONES, SR., P.J., and
TIM McCORMACK, J., CONCUR